DITMORE LAND AND CATTLE
COMPANY, Appellant,

v.

Leo KAHN, Appellee.

No. 3294.

Court of Civil Appeals of Texas.
Eastland.

April 26, 1957.

Conner & Conner, Eastland, for appellant.

Frost & Frost, Eastland, for appellee.

GRISSOM, Chief Justice.

On March 10, 1949, a judgment was rendered in Eastland County foreclosing a tax lien on five acres of land described therein as follows:

"Tract No. 3: 5 ac. Abst. 68 L. Cooper Sur. as desc in Vol 342, Page 448, deed rec. of Eastland Co. Tex. & being out of the S½ of the NE¼ Sec 4, Blk 4, H&TC Ry. Co. Sur. Eastland County, Texas, L. Cooper, Grantee."

On April 11, 1949, the sheriff sold said property and executed a deed thereto to Ditmore Land and Cattle Company, hereafter referred to as Ditmore. In June, 1953, Leo Kahn filed suit in trespass to try title to an undivided 270/2880 interest in the minerals in said five acres. In October, 1954, Kahn filed an amended petition which in the first count was practically the same as the original and in the second count was a bill of review attacking all of said tax proceedings and deed both as to said mineral, or royalty, interest and the surface

of said five acres. It was alleged that in May, 1937, Kahn acquired said five acres of land and said mineral interest from C. H. Goodwin, said five acres and said mineral interest being separately described in the deed, as shown by its record in volume 342 at page 448 of the Deed Records of Eastland County. He alleged the filing of said tax suit against twenty-one defendants, including Kahn, to foreclose tax liens on said five acres and other unrelated tracts in which Kahn had no interest; that in November, 1948, a citation for personal service on all the defendants was issued to Eastland County; that the sheriff of Eastland County returned said citation showing service on only three of the twenty-one defendants in Eastland County and stating that he was unable to locate any other defendants in that county; that no other citation for personal service was issued; that Horace Walker, as attorney for the State, filed an affidavit for citation by publication of all defendants stating that their residences were unknown to him and "after inquiry cannot be ascertained;" and that he had caused citation to be issued for personal services on each defendant "to each and all addresses shown on each and all * * * assessment lists in the office of the Tax Assessor-Collector of this County on property described in this suit, and has attempted to secure personal service thereon, but has not been able to do so." (Emphasis ours.) Kahn alleged that said affidavit was false and fraudulently made; that the property appeared on the tax assessor's list in the office of the tax assessor-collector of Eastland County for every year involved in said suit; that, contrary to the affidavit, the name of the owner of said property was known; that for every year for which delinquent taxes were claimed Kahn's address appeared on said tax assessment list in said office as the owner of said mineral interest; that said attorney knew the name and address of Kahn and deliberately made said false affidavit; that, if he did not, a casual check in the office where he prepared said suit would have disclosed said information;

that Kahn acquired the five acres and said mineral interest from C. H. Goodwin in the same transaction and, although they were separately assessed on the tax rolls, Walker had readily accessible to him the correct address of Kahn, which was on the assessment rolls showing the assessment of taxes on said mineral interest against Kahn; that, contrary to the affidavit, Walker did not attempt to obtain personal service of citation and that the attempt alleged was a subterfuge; that citation by publication was issued prior to the return of one citation for personal service and the return on the citation by publication was made more than a month prior to the return of one for personal service; that judgment was rendered for the State only in the tax suit and for only $36.49; that the five acres were attempted to be conveyed by the sheriff to Ditmore without reference to, or description of, the mineral interest owned by Kahn, which had been separately assessed to him. Kahn alleged that there was neither a foreclosure of a lien against said minerals nor a conveyance thereof.

Kahn alleged the court was without jurisdiction to render said judgment and said proceedings and deed should be annulled because the affidavit upon which citation for publication was based was false and fraudulent. (In this connection see Kitchen v. Crawford, 13 Tex. 516, 520 and 21 A.L.R.2d 936.) He alleged that said affidavit did not comply with Texas Rules of Civil Procedure, rule 117a and that it did not contain allegations that "diligent" inquiry had been made to ascertain either the name or residence of the owner.

Kahn alleged that he had no notice of any of said tax proceedings or the sheriff's deed until the 26th of September, 1952, and that he could not have learned thereof prior thereto by the use of ordinary diligence; that he continued to receive "oil run payments" from said mineral interest until August 10, 1952, and did not learn that Ditmore was claiming an interest in any of said property until September 26, 1952, and

that nothing happened prior thereto to indicate that anyone was claiming the property.

Kahn alleged that since the suspension of payment of royalty in August, 1952, there had accumulated from his 270/2880 interest in the minerals more than $2,000; that he had paid all taxes assessed against said mineral interest; that he never received a tax statement with reference to said five acres and did not know that the five acres and said mineral interest had been separately assessed until September 26, 1952; that at all times he had been able to pay the taxes assessed against the five acres and would have done so had he known they were assessed against it separately from said mineral interest. He alleged that the property sold at the tax sale for a grossly inadequate consideration. He tendered the purchase price paid at the tax sale, plus interest and all taxes paid by Ditmore and offered to do equity. He prayed, among other things, for judgment setting aside said tax sale and deed, removal of the cloud on his title and judgment for the accumulated oil runs from his mineral interest. The court rendered judgment in accord with said prayer and that the agreed purchase price, to wit, $25, plus interest and taxes paid by Ditmore be paid into court for Ditmore. Ditmore has appealed.

■ The question relative to the validity of the service of citation was decided in Ditmore Land and Cattle Company v. Hicks, Tex.Civ.App., 282 S.W.2d 753; Id., Tex., 290 S.W.2d 499.

Appellant contends the court erred in permitting introduction of the affidavit for citation by publication, records of the tax assessor showing the assessment of taxes against Kahn on said mineral interest and his address, and in rendering judgment cancelling the sale and tax deed because the judgment was valid on its face and Kahn's suit was a collateral attack on said judgment. Appellant further contends that, as a matter of law, Kahn's suit was barred by both the two and four year statutes of limitation and laches. Vernon's Ann.Civ.St. arts. 5526, 5529.

Rowland v. Klepper, Tex.Com.App., 227 S.W. 1096 and Harrison v. Sharpe, Tex.Civ. App., 210 S.W. 731 (Writ Ref.) were suits to set aside tax sales and deeds. It was there held that since the State had been paid its taxes it was not a necessary party; that it was not necessary to allege that the defendant in the tax suit had a meritorious defense; that such a suit as this was a bill of review and a direct attack on the tax proceedings; that parol evidence was admissible to contradict recitals of service in the judgment; that, although the tax judgment could not be set aside, upon a proper showing, the sale and tax deed should be cancelled. It was further held, under a comparable fact situation, that when the property was purchased for a grossly inadequate consideration the vendee was not an innocent purchaser.

■■ Our Supreme Court has held that such a suit is not barred by the statutes of limitation until four years after the defendant knew or should have known of the judgment. In Levy v. Roper, 113 Tex. 356, 256 S.W. 251, 253, the court said:

"The action of Mrs. Roper and children was brought within 4 years after they either knew or could have known, by the use of ordinary diligence, of the judgment foreclosing the vendor's lien or of the sheriff's sale. The action was therefore not barred by limitation, even though said parties had all been adults when the judgment was rendered. Kimmell v. Edwards (Tex.Civ.App.) 194 S.W. 169; Foust v. Warren (Tex. Civ.App.) 72 S.W. 406, 407; Rose v. Darby, 33 Tex.Civ.App. 341, 76 S.W. 799."

See also Harrison v. Orr, Tex.Com.App., 296 S.W. 871, 873, Ibid., Tex.Com.App., 10 S.W.2d 381, 382; Smith v. Lightfoot, Tex. Civ.App., 143 S.W.2d 151, 152; 25 Tex.Jur.

644, and 6 Tex.Jur.Supp. 572. We conclude that there was evidence sufficient to sustain findings to the effect that said tax judgment, sale and deed were procured by the fraud of Walker and that Kahn did not learn thereof until September, 1952, and was not negligent in failing to sooner acquire such information or bring suit.

Looking at the evidence in the light most favorable to the court's findings and judgment, as we are required to do, there was evidence sufficient to sustain a conclusion that the affidavit that there had been an attempt to obtain personal service on Kahn was false and fraudulently made; that his address was shown many times on the tax assessment rolls in the office where Walker worked in preparing the suit; that the tax receipt book, which showed Kahn had paid his taxes for 1944 and 1945 on his mineral interest showed that he was a resident of Dallas; that the deputy tax assessor in said office would have shown them to Walker on request; that the District Clerk, who took Walker's affidavit for citation by publication that he did not know the residence of the defendants, knew two of the defendants and their addresses and would have given Walker such information upon inquiry; that Walker used no diligence to learn the address of Kahn; that by the exercise of any diligence he could have been found and personally served; that in his petition he described the five acres against which he foreclosed a tax lien as being the five acres described in volume 342 at page 448 of the deed records of Eastland County. This was the deed wherein C. H. Goodwin conveyed said five acres and said mineral interest, separately described, to Kahn. It showed Goodwin was a resident of Erath County. No citation issued to that county. The five acres was apparently foreclosed upon as the property of Goodwin for taxes assessed only against Goodwin while it was owned by Kahn. The sheriff served Kahn and Goodwin by publication at Walker's request because he was unable with his limited staff to personally serve the many defendants in

all the tax suits then pending. In addition, Walker's affidavit, a prerequisite for issuing the citation by publication did not contain the statement that he had made "diligent" inquiry. That requirement of R.C.P. 117a was omitted from the affidavit. R.C.P. 117a, par. 3, then also provided that where the address of any record owner was shown on the assessment list in the assessor's office he could not be cited by publication unless the party applying for such citation should first make affidavit that he had caused citation for personal service to be issued to "the address shown on said * * * assessment list and has attempted to secure service thereof, but has been unable to do so." Walker's affidavit to that effect was completely false. It is undisputed that Kahn's address was shown on the assessment list in the assessor's office in connection with Kahn's ownership and the assessment against his interest in the minerals in said five acres of land and that Walker made no attempt to have him served with citation at such address. The same is true as to Goodwin. The evidence is sufficient to show that as to Kahn the issuance and purported attempt to personally serve him with citation in Eastland County was a fraudulent subterfuge. The deed record that Walker used to describe the five acres showed Goodwin's residence to be in Erath County. No citation was issued to that county. He had citation for personal service on the twenty-one defendants in said suit issued only to Eastland County. Only three of them were found there. He then made the false and fraudulent affidavit, which did not comply with the law, and thereby procured issuance of citation for publication. The sheriff testified in effect that Walker instructed him to serve as many of the defendants personally as he "conveniently" could, with the number of deputies he had, and serve all the others by publication. He testified substantially the same as he did in Ditmore Land and Cattle Company v. Hicks, Tex., 290 S.W.2d 499, 500, wherein, pertinent to this question, our Supreme Court said:

"The evidence discloses that if a diligent inquiry had been made some or all of the defendants could have been found and personally served. The sheriff testified that some three thousand tax suits were placed with him for the service of process and that he was unable with his staff to serve personally six thousand defendants; that the attorney instructed him to serve personally all that he could and the others by publication. It is our opinion that the failure to comply with the rule and the admitted lack of diligence to locate the defendants renders the service by publication ineffective. The fact that the sheriff's office is swamped at one time with several thousand citations cannot serve as an excuse for failing to follow the rule."

Kahn contended and the court found that the State did not bring a suit to foreclose a lien on his mineral interest. We are inclined to agree. See Victory v. Hinson, Tex.Civ.App., 71 S.W.2d 365, 367, Id., Tex.Com.App., 129 Tex. 30, 102 S.W.2d 194, 195 and Holt v. Wichita County Water Improvement Dist. No. 2, Tex.Com.App., 63 S.W.2d 369, 370. The minerals conveyed to Kahn by Goodwin were separately described in the deed as a 270/2880 interest in the minerals in the described land, subject to a certain lease, and the habendum clause provides:

"To Have And To Hold The above described premises and the above conveyed oil and gas and other minerals * * *."

The "royalty" interest separately assessed to Kahn is described on the tax records as ".09375 R.I.". Thus the tax records plainly identify them as the same. Of course, ordinarily foreclosure of a lien on five acres of land would also constitute a foreclosure on all minerals owned by the same defendant in said five acres. As to the property in controversy, however, the record shows that Kahn paid the taxes assessed against this mineral interest in said five acres for 1944 and 1945 as they became due. The tax suit was for taxes alleged to be unpaid for the years 1937 to 1947, both inclusive. Taxes for said years on the five acres were assessed against C. H. Goodwin. No taxes were assessed against the minerals in said five acres until 1942. Beginning in 1942 and continuing each year thereafter the tax assessor separately assessed the taxes against Kahn's royalty interest and said five acres. Said five acres and said mineral interest were separately described in the conveyance by Goodwin to Kahn and on the assessment rolls, the royalty being assessed to Kahn and the five acres to Goodwin. If Walker read the deed from Goodwin to Kahn, to which he referred in his tax petition for description of the property on which he sought forclosure, he knew Goodwin did not own the surface and he knew Goodwin lived in Erath County when he executed the deed and he knew Kahn's said royalty interest and the surface of the five acres were separately described in the conveyance to Kahn. If he read the assessment records, to which he had to refer in bringing the suit, he knew said royalty interest was separately assessed against Kahn; that Kahn had paid taxes on said mineral interests for two of the years in which Kahn was alleged to be delinquent and he knew Kahn's address.

In 1952 Kahn paid all of the taxes against his minerals, except those for 1944 and 1945, which he had previously paid. The petition indicates that as to the five acres Goodwin may have been intended as the only defendant. At the top of the schedule in the petition, immediately following the allegation that the taxes were delinquent and unpaid "for the following years" and "against the property described below" was the name of C. H. Goodwin; then followed the description of the five acres and a showing that the taxes for 1937 through 1947 were delinquent and had been assessed to C. H. Goodwin. With two

minor exceptions, the amounts alleged to be owing for each of the ten years on the five acres was exactly the same as the records show were separately assessed against Goodwin and. said five acres for each of said years. None of them could include the amounts separately assessed to Kahn's mineral interest in the "C. H. Goodwin lease" because they were not large enough, as shown by the tax assessor's records. Following the allegations relative to Goodwin were the words "Stephenville, Texas". In apparently the same handwriting and written with the same material in blue at the bottom of the page were "Ralph Walker to C. H. Goodwin" and a reference to said tract and the date of said conveyance. This is now crossed out with a pencil. At the bottom of said page and to the left of the foregoing, written in pencil and apparently in a different handwriting, is "Leo Kahn C. H. Goodwin". On the first page of the petition twenty-one defendants were named, relative to several unrelated tracts, and it was alleged that the defendants were indebted to the several named plaintiffs for taxes due on real estate in Eastland County "as hereinafter set out." There was no allegation that Kahn either owned or owed taxes on the five acres. It appears that the taxes sued for were those assessed separately against the five acres, minus Kahn's minerals, and did not include any of the amounts charged against the separately assessed mineral interest. However, we do not regard this question as controlling because we think the judgment canceling the sale and deed must be sustained as to both the five acres, minus Kahn's minerals, and his mineral or royalty interest for the reason stated by our Supreme Court in Ditmore Land and Cattle Company v. Hicks, supra. The equities in this case are stronger in favor of the tax debtor than they were in that case. The only particular in which the case for the tax debtor in this case is not stronger than in the Hicks case is that the bill of review to set aside the sale and deed was not filed until after the expiration of four years from the execution of the tax deed. But, Kahn alleged, and the evidence supports his allegations and the court's findings, that he had no knowledge thereof and no reason to learn of the judgment until the latter part of September, 1952; that he continued to be paid his "oil runs" until said time, had never received a statement of taxes due on the five acres of land and did not know that it was separately assessed from his mineral interest; that during all of said time he was able to and would have paid said taxes had he known thereof and that at the time of the trial he was ninety-three years of age and deaf. In fact, he was so deaf that, although present, the parties agreed to his testimony. Under the situation disclosed by this record we cannot say that, as a matter of law, Kahn's suit was barred by limitation or laches. Levy v. Roper, 113 Tex. 356, 256 S.W. 251, 253; Harrison v. Orr, Tex. Com.App., 296 S.W. 871, 873; Smith v. Lightfoot, Tex.Civ.App., 143 S.W.2d 151, 152; 25 Tex.Jur. 644; Hammond v. Hammond, Tex.Civ.App., 210 S.W.2d 829 (Writ Dis.) and Freeman v. B. F. Goodrich Rubber Co., Tex.Civ.App., 127 S.W.2d 476, (Dis. by Agreement).

■ The evidence was sufficient to support conclusions that the property sold for a grossly inadequate consideration and that Ditmore was, therefore, not an innocent purchaser. We conclude that the judgment is sustained by the authorities cited and that appellant's points must be overruled.

The judgment is affirmed.