

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00032-CV

_____

ANN BASLEY, LAURA HALE, LINDELL L. HALE, AND
VICKIE HALE WHITT, Appellants

V.

ADONI HOLDINGS, LLC, AND DODEKA, LLC, Appellees

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 75,342

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

In a case rising out of the District Court of Hunt County, Adoni Holdings, LLC, and Dodeka, LLC, had filed pleadings seeking relief under the Texas Declaratory Judgments Act (Chapter 37 of the Texas Civil Practice and Remedies Code) and Ann Basley, Laura Hale, Lindell L. Hale, and Vickie Hale Whitt had responded with a counterclaim, also seeking a declaratory judgment. After a bench trial, the trial court awarded a declaratory judgment in favor of Adoni Holdings, LLC, and Dodeka, LLC, and against the original defendants. It is from that judgment that Basley, et al., appeal.

**Background of Controversy**

On March 19, 2008, Dodeka obtained a justice court judgment in Dallas County against Whitt for $8,614.64 for credit card debt. In an effort to collect on that judgment, representatives of Dodeka discovered a 0.887-acre tract of land with a dwelling house in Hunt County to be held in Whitt's name and obtained a writ of execution.[1] On February 2, 2010, a constable's sale was conducted pursuant to the writ of execution on the judgment, and the real estate (carried on the tax rolls as valued at $54,300.00) was struck off at sale for $4,442.43 to Adoni. On February 18, 2010 (before the constable's deed to Adoni was signed or placed of record), Whitt signed a general warranty deed conveying the property to Ann Basley (her niece), Laura Hale (her sister), and Lindell L. Hale (her brother),[2] and the deed was promptly placed of record.

---

[1] No mention is made in the record that any abstract of the judgment was filed in Hunt County pursuant to TEX. PROP. CODE ANN. § 52.001 (West Supp. 2011), and it is assumed that none was filed.

[2] Whitt admitted at trial that no consideration was paid for the property.

2

Upon discovering that Whitt had made a conveyance of the realty, Dodeka brought a declaratory judgment action against Whitt and her grantees, alleging that the deed she had given to her relatives was a fraudulent transfer. At trial, Dodeka and Adoni asserted a challenge to the jurisdiction of the court, maintaining that the sole jurisdiction to determine the validity of the procedures followed pursuant to the writ of execution lay with the court which issued the writ (a justice court in Dallas County).

Whitt and her grantees responded with a counterclaim alleging that discrepancies in the notice of the execution sale rendered the resulting sale void, that the underlying debt owed by Whitt to Dodeka was no longer valid under a theory of offer of payment and refusal, alleging that Dodeka was guilty of malicious prosecution, and seeking attorney's fees, invoking declaratory judgment claims as the basis.

The trial court explicitly refused to rule on Dodeka's and Adoni's jurisdiction argument,[3] found the transfer from Whitt to her relatives to be a fraudulent transfer, declared Adoni to be the sole owner of the realty the subject of the controversy, and awarded attorney's fees to Adoni and Dodeka.

On appeal, Whitt raises five issues arguing the evidence was legally insufficient, the constable's sale violated Whitt's right to due process, the trial court erred in refusing to set aside the constable's sale, the trial court had jurisdiction to entertain her claims that the execution sale was invalid, and attorney's fees should be awarded to Whitt and the other appellants rather than

---

[3]When Adoni and Dodeka requested a ruling on jurisdiction, the trial court stated, "I don't think it's necessary to address it." Adoni and Dodeka renewed their objection, and the trial court later stated, "I don't think in order to make these findings that I have to address it."

3

there being an award of attorney's fees in favor of Dodeka and Adoni. Unless the context

requires it, references to the appellants will hereafter be made as "Whitt."

**I. The Evidence of Insolvency Is Legally Insufficient**

In her first point of error, Whitt argues that the record contains legally insufficient

evidence that she was insolvent. The Fraudulent Transfer Act provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor whose claim arose before the transfer was made or the obligation was
> incurred if the debtor made the transfer or incurred the obligation without
> receiving a reasonably equivalent value in exchange for the transfer or obligation
> and the debtor was insolvent at that time or the debtor became insolvent as a
> result of the transfer or obligation.
>
> (b) A transfer made by a debtor is fraudulent as to a creditor whose
> claim arose before the transfer was made if the transfer was made to an insider for
> an antecedent debt, the debtor was insolvent at that time, and the insider had
> reasonable cause to believe that the debtor was insolvent.

TEX. BUS. & COM. CODE ANN. § 24.006(a), (b) (West 2009).

The Act provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater

than all of the debtor's assets at a fair valuation." TEX. BUS. & COM. CODE ANN. § 24.003(a)

(West 2009). The Act also defines "asset" as:

> property of a debtor, but the term does not include:
> (A) property to the extent it is encumbered by a valid lien;
> (B) property to the extent it is generally exempt under nonbankruptcy
> law; or

4

> (C) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant, under the law of another jurisdiction.

Tex. Bus. & Com. Code Ann. § 24.002(2) (West 2009).

In determining legal sufficiency, we analyze "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Walker & Assocs. Surveying*, *Inc. v. Austin*, 301 S.W.3d 909, 916 n.4 (Tex. App.—Texarkana 2009, no pet.). We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact; (2) the rules of law or of evidence prevent giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) there is conclusive evidence of the opposite of the vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms.*, *Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

In its findings of fact, the trial court made a finding that other than the property which had been the subject of the execution sale, Whitt "had no other nonexempt assets subject to execution."

5

At trial, Whitt summarized her assets as her home (which was subject to a mortgage) in Mesquite, Texas,[4] her personal automobiles, personal property, and a "general operating bank account." Whitt testified she did not own any real estate other than her home in Mesquite. When asked if she had "a sum of money stashed away in a bank account as an investment anywhere" or if she had a stock portfolio, Whitt responded in the negative. Whitt was never asked the balance of her bank account.[5]

Whitt now argues that the evidence is insufficient to sustain the findings because Adoni and Dodeka proved only the nature of Whitt's assets at the time of trial, rather than at the time of the transfer. Whitt further argues Dodeka and Adoni proved neither the amount of her checking account nor the amount of her debts. Even though her checking account was described as a "general operating bank account," there was no evidence that she had less than a sufficient amount to satisfy the judgment. Further, the record is silent as to the types of personal property owned by Whitt or the value of that personal property, and the record does not establish that Whitt and her husband did not have personal property that exceeded the applicable $60,000.00 limit which is allowed as exempt property. *See* TEX. PROP. CODE ANN. § 42.001 (West Supp. 2011), § 42.002 (West 2000) (specifying specific limits on exempt personal property). Finally, Whitt testified that after the execution sale occurred, she made a tender to the holder of the debt through her attorney of a cashier's check for the full amount of the original Dallas County

---

[4]We note that a debtor's homestead is not considered an asset for the purposes of the insolvency analysis. *See Corpus v. Arriaga*, 294 S.W.3d 629, 637 (Tex. App.—Houston [1st Dist.] 2009, no pet.). It is uncontested (but unproven) that Whitt's residence in Mesquite was her homestead.

[5]Adoni and Dodeka's attorney later referred to this account as her "day-to-day checking account."

judgment. The fact that Whitt could produce, shortly after the sale, a cashier's check for the entire amount of the judgment leaves the impression that she was not insolvent at the time of the transfer of the property to her relatives.

Although Adoni and Dodeka had the burden to establish the amount and nature of Whitt's assets and her liabilities at the time of the transfer, they failed to establish either. While the record creates a suspicion that Whitt may have been insolvent at the time of her voluntary transfer of the property to her relatives, it reaches only to the level of suspicion. The evidence is legally insufficient to support a finding of Whitt's insolvency at the time of the transfer.

Adoni and Dodeka alternatively argue that a presumption of insolvency contained in the Fraudulent Transfer Act applies in this case.[6] Section 24.003(b) provides, "A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent." TEX. BUS. & COM. CODE ANN. § 24.003(b) (West 2009). Adoni and Dodeka argue that they proved Whitt was not generally paying her debts because she did not pay the judgment which was the subject of the suit and failed to timely pay ad valorem taxes assessed against the Hunt County property.

We disagree that the record contains sufficient evidence to find Whitt was "generally not paying" her debts as they became due. The comments to the Uniform Act provide:

---

[6]We note that although findings of fact were made, the trial court did not make any findings of fact specific to the presumption. At oral argument, Whitt's attorney stated the missing finding did not preclude this Court from addressing Adoni and Dodeka's presumption argument. For the purposes of this appeal, we will presume that the trial court's finding of insolvency justifies an implied finding of a presumption of insolvency. *See Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("When the trial court's findings of fact address a ground of recovery or defense, but inadvertently omit an essential element, we may infer the omitted element. . . .").

7

> In determining whether a debtor is paying its debts generally as they become due, the court should look at more than the amount and due dates of the indebtedness. The court should also take into account such factors as the number of the debtor's debts, the proportion of those debts not being paid, the duration of the nonpayment, and the existence of bona fide disputes or other special circumstances alleged to constitute an explanation for the stoppage of payments. The court's determination may be affected by a consideration of the debtor's payment practices prior to the period of alleged nonpayment and the payment practices of the trade or industry in which the debtor is engaged.

UNIF. FRAUDULENT TRANSFER ACT § 2, cmt. 2, 7A U.L.A. 38 (2006). The record contains evidence concerning only two debts that were delinquent—the credit card debt that formed the basis of the suit from which the execution issued and the ad valorem taxes assessed against the property the subject of the execution sale. Whitt admitted that taxes assessed against the property were not timely paid, but claimed she had been making "monthly installments" on the delinquency. The record does not contain any evidence of the duration of the nonpayment or the circumstances surrounding the nonpayment of taxes. Most importantly, the record does not contain any evidence of the total amounts of Whitt's debts or the proportion of these debts not being paid. Although the record reflects that Whitt has a mortgage on her residence, it does not reflect whether this debt was being paid in accord with the note secured by the mortgage. Adoni and Dodeka merely proved Whitt was failing to pay the debt for which judgment had been taken and was delinquent on another debt. This evidence was insufficient to establish that Whitt was generally not paying her debts as they became due.

Adoni and Dodeka failed to establish Whitt was actually insolvent at the time of the conveyance to her relatives and also failed to establish that the statutory presumption of insolvency should apply. The record does not support a finding that Whitt's debts were greater

8

than her assets at the time of the transfer. The record only establishes a suspicion that all of Whitt's assets, other than the Hunt County real estate, were exempt from seizure. A mere suspicion is less than a scintilla of evidence. Accordingly, the evidence is legally insufficient to support a conclusion that Whitt was insolvent and, therefore, the trial court erred in finding the transfer of the Hunt County real estate was fraudulent under the Fraudulent Transfer Act.

## II.    The Trial Court Had Exclusive Jurisdiction

Adoni and Dodeka argue that the district court lacked jurisdiction to set aside the execution sale.[7] Dodeka and Adoni argue the general rule (i.e., that a suit to set aside an execution sale must be brought in the court that issued the writ of execution), should control and the trial court therefore lacked jurisdiction over issues related to the execution sale.[8] Whitt

---

[7]Dodeka and Adoni alternatively argue that Whitt lacks standing until she has first successfully challenged the execution sale in justice court. The general test for standing in Texas requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). Although the issue of whether a court has subject-matter jurisdiction is a question of law, "disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The record establishes a real controversy in which Whitt is personally aggrieved that will be actually determined. *See Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (must be personally aggrieved).

[8]Adoni and Dodeka also cite TEX. CIV. PRAC. & REM. CODE ANN. § 15.013 (West 2002), for the proposition that "Appellants' complaints must be brought in the court out of which the writ was issued." The plain language of Section 15.013 does not require mandatory venue in a particular court. Section 15.013 merely requires suit to be brought in the "county" the judgment was rendered. TEX. CIV. PRAC. & REM. CODE ANN. § 15.013. Under the facts of this case, though, the district court (Hunt County) is in a different county than the justice court that rendered the judgment (Dallas County). First, Section 15.011 requires suits concerning real property to be brought in the county the real property is located. TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (West 2002). Last, any violation of Section 15.013 does not deprive the trial court of jurisdiction. The mandatory venue provisions of Chapter 15 are generally not jurisdictional and can be waived. *Scott v. Gallagher*, 209 S.W.3d 262, 264 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Although Adoni and Dodeka complained that the action was not brought in the proper court, no complaint concerning the mandatory venue statutes was presented to the trial court. Any violation of a mandatory venue provision has been waived.

9

argues an exception to the general rule should be recognized because only the district court had jurisdiction over land disputes.

A proceeding to set aside an execution sale may be brought in the court that issued the writ of execution to vacate the sale, or by a trespass to try title action. *See* 34 TEX. JUR.3D *Enforcement of Judgments* § 146 (2010). Although an attack in one court upon the judgment of another court would normally be considered a collateral attack,[9] Texas courts have held that a trespass to try title action, when the pleadings challenge the validity of the execution sale, is a direct attack. *See Stone v. Day*, 5 S.W. 642, 644 (Tex. 1887); *Pantaze v. Slocum*, 518 S.W.2d 407, 412 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). The residual statute of limitations applies; a suit to set aside the sale must be brought within four years. *Ditmore Land & Cattle Co. v. Kahn*, 302 S.W.2d 145, 147 (Tex. Civ. App.—Eastland 1957, no writ).

As a general rule, a motion or suit to set aside an execution sale must be brought in the court that issued the writ of execution. *See Hillkee Corp. v. Harrell*, 573 S.W.2d 558, 559 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.); *see also Green v. Watson*, 860 S.W.2d 238, 244 (Tex. App.—Austin 1993, no writ) (op. on reh'g); *Inman v. Orndorff*, 596 S.W.2d 236, 238 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ). Although Dodeka and Adoni are correct that execution sales must normally be challenged in the court that issued the writ, the District Court

---

[9] *Empire Gas & Fuel Co. v. Albright*, 126 Tex. 485, 495 (1935); *see Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) ("Unless a judgment of a court of general jurisdiction is void, it is not subject to collateral attack in another court of equal jurisdiction."). More recently, though, the Texas Supreme Court has defined a collateral attack as "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Thus, the difference between a collateral attack and a direct attack depends on the purpose for which the proceedings were instituted.

10

of Hunt County has exclusive jurisdiction over title disputes regarding real estate situated in Hunt County.[10] Thus, we are presented with a conflict of two general rules.

In forcible detainer actions, Texas courts (including this Court) have held that justice courts lack jurisdiction to rule on the right of immediate possession when a genuine issue of title exists.[11] Whitt argues that we should adopt a similar exception for execution sales pursuant to a writ of execution issued from a justice court. It is well established that justice courts lack jurisdiction to resolve "a suit for trial of title to land." TEX. GOV'T CODE ANN. § 27.031 (West Supp. 2011). In a case extremely similar to this case, the First District Court applied the exception contained in forcible detainer cases to a foreclosure sale. *See Mitchell v. Armstrong Capital Corp.*, 911 S.W.2d 169, 171 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also Moore v. Miller*, 155 S.W. 573, 579 (Tex. Civ. App.—San Antonio 1913, writ ref'd) (op. on reh'g) (concluding justice court lacked jurisdiction). We find the reasoning of *Mitchell* and *Moore* persuasive and conclude, because a genuine issue of title exists in this case, the Dallas County justice court lacked jurisdiction.

Although the general rule is that execution sales must be challenged in the court that issued the writ of execution, an exception exists when a justice court issued the writ of execution

[10]*See Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no pet.) (concluding district court in Tom Green County had exclusive jurisdiction over real property title disputes); *compare* TEX. GOV'T CODE ANN. § 26.043(8) (West 2004) (constitutional county courts do not have jurisdiction in "a suit for the recovery of land"), *with* TEX. GOV'T CODE ANN. § 25.0003(a) (West Supp. 2011) (providing statutory county courts have same jurisdiction as prescribed by law for constitutional county courts) and TEX. GOV'T CODE ANN. §§ 25.1032(c)(1), 25.2162(a) (West 2004), § 25.2222 (West Supp. 2011) (granting certain county courts at law jurisdiction over controversies involving title to real property).

[11]*Geldard v. Watson*, 214 S.W.3d 202, 206 (Tex. App.—Texarkana 2007, no pet.); s*ee Aguilar v. Weber*, 72 S.W.3d 729, 732 (Tex. App.—Waco 2002, no pet.); *Falcon v. Ensignia*, 976 S.W.2d 336, 338 (Tex. App.—Corpus Christi 1998, no pet.); *Rodriguez v. Sullivan*, 484 S.W.2d 592, 593 (Tex. Civ. App.—El Paso 1972, no pet.).

which resulted in a sale and a genuine title dispute exists. Because a justice court lacks jurisdiction to decide issues of title, a district court having jurisdiction in Hunt County had exclusive jurisdiction.[12] The trial court had jurisdiction to set aside the execution sale.

## III. The Trial Court Erred in Refusing to Set Aside Execution Sale

In Whitt's next issue, she argues that the trial court erred in refusing to set aside the constable's execution sale. Technical irregularities, standing alone, will not warrant the setting aside of an execution sale.[13] *McCoy v. Rogers*, 240 S.W.3d 267, 275 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 827 (Tex. App.—Texarkana 1999, no pet.). An execution sale, though, may be set aside when the sale price was grossly inadequate[14] and irregularities in the sale tended to contribute to the inadequate price. *McCoy*, 240 S.W.3d at 275. This Court has noted "proof of an irregularity coupled with grossly inadequate consideration, gives rise to an inference or presumption that the irregularity contributed to the low price." *Apex Fin.*, 7 S.W.3d at 827 (presumption can be rebutted).

---

[12]Because Whitt has prevailed on her nonconstitutional arguments, it is not necessary for us to address whether Whitt's due process arguments were waived or whether Whitt's right to due process was violated. *See VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex. 2007) ("Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitutional questions.").

[13]This is distinguishable from a judicial sale, which must be strictly complied with. Unlike an execution sale, the authority for a judicial sale is derived from the court order. *See* 34 TEX. JUR.3D *Enforcement of Judgments* § 189 (2010). *Compare Williams v. Gillespie*, 346 S.W.3d 727, 731 (Tex. App.—Texarkana 2011, no writ) (strict compliance with judicial sale) *with Miesch v. Anderson*, 90 S.W.2d 314, 318 (Tex. Civ. App.—Texarkana 1936, no writ) ("The officer who conducts a sale under ordinary writ of execution derives his authority, not from a court order, but from the statute and the writ . . . .").

[14]"[T]he term gross inadequacy of price is used to designate such a consideration as no sane man would accept, and no fair-minded person would offer, for the property." *Allen v. Pierson*, 60 Tex. 604, 606 (Tex. 1884).

The record establishes the property was appraised at $54,300.00, but was sold for $4,442.43. There is no evidence disputing that the tax appraisal was not consistent with a fair market value of the property. We determine that there was a gross disparity between the value of the property sold and the amount received at the execution sale.[15] Adoni and Dodeka concede the publication of the notice of the sale in a local newspaper did not comply with TEX. R. CIV. P. 647 because the first appearance of the published notice of sale was nineteen days prior to the sale instead of the required twenty days. Therefore, the record conclusively establishes a grossly inadequate price and procedural irregularities in the sale. There was no evidence presented by Adoni and Dodeka to rebut the presumption that the procedural irregularity caused the grossly inadequate price; therefore, the presumption that there was a causal connection between the slight procedural irregularity and the disparity between the value of the property and the amount received at sale remains in force.

## IV. Neither Party Is Entitled to Attorney's Fees

Whitt requests that we reverse the award of attorney's fees to Adoni and Dodeka and render judgment awarding Whitt attorney's fees. Whitt claims she is entitled to attorney's fees

---

[15]Cases in which appellate courts determined the sales price to be disparate to the value of the property include the following: *Weaver v. Nugent*, 10 S.W. 458 (Tex. 1888) ($10.00 sales price at sheriff's sale for lands worth from $3,000.00 to $6,000.00); *Cox v. Wheeler*, 150 S.W.2d 159 (Tex. Civ. App.—Texarkana 1941, no writ) (price at sheriff's sale was $155.00 for property found to be worth $1,000.00); *Collum v. DeLoughter*, 535 S.W.2d 390, 393 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.) ($2,000.00 price paid at sheriff's sale for property worth $13,500.00); *Pantaze v. Slocum*, 518 S.W.2d 407 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.) (sheriff's sale price, $225.00 for property worth $22,000.00); *Nance v. Currey*, 257 S.W.2d 847, 848 (Tex. Civ. App.—Dallas 1953, no writ) (property having net value of $142,516.05 sold at sheriff's sale for $2,500.00);.

because this case was brought as a declaratory judgment action.[16]  Adoni and Dodeka respond that although this case was brought as a declaratory judgment action, it should have been brought as a trespass to try title and attorney's fees should not have been available.

Except for boundary line disputes, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property and such claims cannot be brought as declaratory judgments.  *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011).  This case should have been brought as a trespass to try title claim and attorney's fees should not have been awarded.  *Id.*

Whitt alternatively argues Dodeka and Adoni waived any complaint about the propriety of an award of attorney's fees on appeal by requesting attorney's fees, without objection, in the trial court.  In her reply brief, Whitt did not cite any authority for her waiver argument.  At oral argument, Whitt cited *Nelson v. Big Woods Springs Improvement Ass'n*, 322 S.W.3d 678 (Tex. App.—Texarkana 2010, pet. denied).  In *Nelson*, this Court noted in a footnote that any issue concerning whether the lawsuit should have been brought as a trespass to try title was unassigned and unpreserved.  *Id.* at 683 n.13.

Unassigned error is error that has not been raised by the parties in their briefs.  *Paselk v. Rabun*, 293 S.W.3d 600, 612 (Tex. App.—Texarkana 2009, pet. denied); 6 MCDONALD & CARLSON, TEXAS CIVIL PRACTICE § 38:3, 1025 (2d ed. 1998); *see* TEX. R. APP. P. 38.1(f); *In re*

---

[16]Under Section 37.009, a trial court may award reasonable and necessary attorney's fees that are "equitable and just."  TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008).  "A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just, and the trial court's power is, in that respect, discretionary."  *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 319 (Tex. App.—Texarkana 2006, pet. denied).

*B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). In a civil case, this Court is generally prohibited from addressing unassigned error. *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998). Because Dodeka and Adoni have briefed this issue as a counterpoint, the error has been assigned.

Further, the doctrine of preservation of error does not entitle Whitt to attorney's fees. There is a distinction between a right to relief from error and whether error in fact occurred. *See* W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 69 (2006). When a party is awarded attorney's fees without any legally correct basis for the award, error has occurred. A party, though, is entitled to relief on appeal only if that party preserves reversible error for appellate review. *See* TEX. R. APP. P. 33.1, 44.1. The doctrine of preservation of error does not create a right to have error committed. The doctrine merely provides most types of error will not be reversed on appeal unless brought to the attention of the trial court.

The trial court did not award attorney's fees to Whitt. Whitt is requesting that this Court award attorney's fees or remand to the trial court with instructions to award attorney's fees to Whitt. Although Adoni and Dodeka previously invited[17] similar error in the trial court, the error in dispute (i.e., an award to Whitt) is not existing trial court error. Dodeka and Adoni did not fail to preserve error, because the error did not occur in the trial court. The award of attorney's fees to Whitt has yet to occur.

In this case, it has been brought to our attention that attorney's fees should not be available to either party. Whitt has not directed our attention to a legally correct basis for an

---

[17]When a party requests a trial court to take an action, the doctrine of invited error prohibits that party from complaining of the error on appeal. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009).

15

award of attorney's fees to her.[18] Dodeka and Adoni do not contest that their award of attorney's fees should be reversed.[19] We conclude neither party is entitled to an award of attorney's fees.

## V.     Conclusion

We conclude the evidence is legally insufficient to establish that Whitt was insolvent at the time of the transfer. The trial court had jurisdiction to set aside the execution sale since the writ of execution was issued by a justice court lacking jurisdiction to resolve title disputes. Because Whitt established procedural irregularities and a grossly inadequate price, the trial court abused its discretion in refusing to set aside the execution sale.

We reverse the judgment of the trial court and render judgment that the execution sale of February 2, 2010, should be set aside and render judgment that Dodeka and Adoni failed to establish that the general warranty deed dated February 18, 2010, was a fraudulent transfer. We reverse the trial court's award of attorney's fees to Dodeka and Adoni and deny Whitt's request for attorney's fees.

---

[18]A party may be entitled relief he would not otherwise be entitled to under certain circumstances such as a Rule 11 agreement or estoppel. There is no evidence of a binding Rule 11 agreement that the prevailing party would recover attorney's fees. *See* TEX. R. CIV. P. 11. We note that judicial estoppel, a form of quasi-estoppel, prohibits a party from taking inconsistent positions during judicial proceedings. *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008). Whitt, though, has not argued or briefed whether the elements of judicial estoppel have been satisfied. Because Whitt has not claimed judicial estoppel, we will not express an opinion concerning whether the doctrine would be applicable under the facts of this case. *See Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.—Fort Worth 2010, no pet.) (quasi-estoppel is an affirmative defense); *see Pat Baker Co.*, 971 S.W.2d at 450 (an appellate court is prohibited from addressing unassigned error in civil case).

[19]"A reversal of the trial court's decision does not necessarily mean the award of attorney's fees was an abuse of discretion." *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 432 (Tex. App.—Texarkana 2008, pet. denied) (remanding to trial court to determine whether award was equitable and just); *Nelson*, 322 S.W.3d at 683 n.13 (trespass to try title issue must be preserved). Dodeka and Adoni, though, do not contest that the trial court's award of attorney's fees to them should be reversed.

Following the reasoning expressed in *Apex*, we tax the costs in this action against Ann Basley, Laura Hale, Lindell L. Hale, and Vickie Hale Whitt. *Apex Fin. Corp. v. Brown*, 7 S.W.3d at 832.


                                        Bailey C. Moseley
                                        Justice


Date Submitted:     May 23, 2012
Date Decided:       June 19, 2012

17