

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00099-CV

_____

IN RE THE ESTATE OF NOBIE FLORENCE PARKER, DECEASED

On Appeal from the 276th District Court
Camp County, Texas
Trial Court No. CV11-1728

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Nobie Florence Parker's physician, Dr. Ted Trimble, testified that, Nobie's physical and mental condition had deteriorated in the two to three years leading up to February 2006, when she executed a will breaking with her former pattern of naming all three of her children as beneficiaries and, instead, naming just her son, Richard Parker.[1]  Trimble opined that, when the 2006 will was executed, Nobie, then eighty-seven years old and suffering from dementia, would not have had sufficient mental ability to understand what she was doing.  In this will contest by Nobie's daughter, JoAnn Parker Neal, a Camp County jury found that Nobie lacked testamentary capacity and was unduly influenced in executing the 2006 will.  Richard appeals.  We affirm the judgment of the trial court invalidating the 2006 will, because this record contains legally sufficient evidence supporting the judgment.

Nobie's 2006 will named Richard both independent executor and sole beneficiary of her estate.  Nobie died in August 2011, and Richard thereafter filed an application to probate the will.  JoAnn contested the probate of the 2006 will on the basis that Nobie lacked the capacity to execute the will and that she signed the will as a result of undue influence.  The jury agreed on both issues, and the trial court entered judgment determining that the 2006 will was invalid.  Because we find the evidence is legally sufficient to support the jury's finding that Nobie lacked testamentary capacity to execute the will, we affirm the trial court's judgment.

---

[1]The record contains five wills Nobie executed before the 2006 will.  The most recent of these wills, executed in August 2003, divided Nobie's estate equally among her three children.  Three wills executed after the death of Nobie's husband, and before the 2003 will, divided the estate equally among Nobie's children.  The will Nobie executed while her husband was alive provided that Nobie's estate would go to her husband, and, if he were to predecease her, then her estate would be divided equally among her children.

2

Richard contends that the evidence established, as a matter of law, that Nobie had testamentary capacity to execute the will and that there is no evidence to support the jury's contrary finding.[2] Richard further contends that the evidence was legally insufficient to support the jury's finding that the will was executed as a result of undue influence. "Under a legal sufficiency standard of review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it." *In re Estate of Vackar*, 345 S.W.3d 588, 595 (Tex. App.—San Antonio 2011, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005)).

Where, as here, "a party attacks the legal sufficiency of an adverse finding on an issue on which [he had] the burden of proof, [he] must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (citing *Sterner Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). When reviewing a "matter of law" challenge, we "must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Dow Chem. Co.*, 46 S.W.3d at 241. When there is no evidence to support the finding, "the entire record must be examined to see if the contrary proposition is established as a matter of law." *Sterner*, 767 S.W.2d at 690 (citing *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982)). We will sustain such a challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital

---

[2]Thus, Richard challenges the *legal* sufficiency of the evidence. He does not challenge the *factual* sufficiency of the evidence.

fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence established conclusively the opposite of a vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). More than a scintilla of evidence exits if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Basley*, 373 S.W.3d at 582 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

Richard, as the proponent of the 2006 will, had the burden of proving that Nobie had testamentary capacity at the time she executed the will. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983); *In re Estate of Reno*, 443 S.W.3d 143, 147 (Tex. App.—Texarkana 2009, no pet.). Nobie had testamentary capacity if she had "sufficient mental ability, at the time of execution of the will, to understand the business in which [she was] engaged, the effect of . . . her act in making the will, and the general nature and extent of . . . her property." *See Reno*, 443 S.W.3d at 147 (citing *In re Neville*, 67 S.W.3d 522, 524 (Tex. App.—Texarkana 2002, no pet.)).

> The testatrix must be able to know his or her next of kin and the natural objects of his or her bounty, and she must have a sufficient memory to collect in her mind the elements of the business to be transacted and to hold them long enough to at least perceive their obvious relation to each other and be able to form a reasonable judgment about them.

*Neville*, 67 S.W.3d at 524; *see Reno*, 443 S.W.3d at 147. When there is no direct evidence that the testator lacked testamentary capacity on the day the will was executed, evidence of her lack of competency at other times is probative of incompetency when the will was executed if it shows a persistent condition that has some probability of existing when the will was executed. *Croucher*, 660 S.W.2d at 57.

4

The question we must determine is whether there was some evidence from which reasonable and fair-minded jurors could find that Nobie lacked testamentary capacity on February 15, 2006. *See Basley*, 373 S.W.3d at 582. In resolving this question, we consider only the evidence which, when viewed in the light most favorable to the jury's finding, supports that finding. We must disregard all evidence to the contrary. *See Sterner*, 767 S.W.2d at 690.

The evidence shows that Nobie had a history of physical problems, many of which stemmed from her diabetic condition. When Dr. Trimble began to care for Nobie in late 2003 or early 2004, Nobie suffered from brittle diabetes and hypertension and had experienced many strokes, as well as a heart attack. Nobie also suffered from heart failure and coronary artery disease. Nobie's blood sugar fluctuated widely and was never well controlled. This fluctuation caused dizziness, headaches, and confusion. Trimble described this condition as a form of dementia. Trimble also discussed Nobie's multiple mini-strokes, as evidenced by lacunar infarcts shown by images from CT scans. These mini-strokes, described by Trimble as "tiny blood clots flipping from the heart to the brain," contributed to the dementia. These conditions worsened from 2004 to 2006.

In late 2005, Nobie's son Mike, with whom she lived, passed away. After Mike passed away, Nobie was frequently hospitalized for various problems including pneumonia, pyelonephritis, kidney infection, and changes in mental status due to blood sugar fluctuation. When talking with Nobie, Trimble could only mention one issue at a time, because if multiple issues were discussed, she would not get anything out of the conversation. Trimble testified that Nobie suffered from senile dementia and memory problems caused by hypertension-causing

5

strokes, blood sugar fluctuations, and compromised vascular supply. JoAnn frequently visited Nobie and took care of her finances. In 2005, Nobie was placed on home health care, because she was unable to care for herself without skilled nursing care.

Given Trimble's history with Nobie and his knowledge of her medical issues, he opined, based on a reasonable degree of medical probability, that Nobie would not have had sufficient mental ability to understand that she was making a will in February 2006. Trimble further opined that Nobie would not have had sufficient mental ability to understand the effect of the act of making a will or to understand the general nature and extent of her property.[3] In the end, it was Trimble's opinion that Nobie did not know what she was doing when she executed the will.

Nobie eventually moved to an assisted-living facility, but Trimble does not recall whether that move took place before the will was executed. Trimble told Richard, after Nobie died, that he did not believe Nobie could have known what she was doing when she changed her will in 2006.

JoAnn testified that, in 2002, Nobie's health began to deteriorate. She had trouble remembering, and JoAnn would do "all kinds of things for her." In 2005, JoAnn began taking care of all of Nobie's bills. By 2006, JoAnn was Nobie's primary caretaker. By that time, Nobie became confused very easily, would see people under her bed, and would forget what she was doing. Although the time frame is not clear, JoAnn testified that her mother had a "hallucination

---

[3]The record also contains evidence that Nobie had testamentary capacity on the date the will was executed. Nobie's attorney, Wayford Wallace, Jr., testified the Nobie made an appointment with him for February 15, 2006, to make some changes to her will. Wallace further testified that Nobie understood that she was making a will and the effect of that will. Wallace offered additional testimony to show testamentary capacity. In the legal sufficiency review we are required to make here, however, we consider only the evidence that supports the jury finding.

about a squirrel" in which Nobie had cooked a squirrel and had squirrel stew. Nobie also told JoAnn that JoAnn should watch a show about "the Parkers" on Channel 7, because JoAnn was on that program. Though JoAnn had never been on television, per her testimony, she listened to Nobie and did not argue with her.

The evidence offered by Trimble and JoAnn indicates a lack of testamentary capacity. Further, this evidence is probative of Nobie's capacity on February 15, 2006, when the will was executed. As early as 2002, Nobie had difficulty remembering. In 2005, before the will was executed, Nobie suffered from senile dementia, was unable to care for herself without skilled nursing care, and relied on JoAnn to take care of her finances. By 2006, these conditions continued to deteriorate, and Nobie began to hallucinate. These facts constitute some evidence that Nobie was without testamentary capacity during February 2006. Trimble offered direct testimony, based on his history of caring for Nobie, that Nobie lacked the requisite capacity to execute a will in February 2006.

Viewing the evidence and inferences in the light most favorable to the jury's finding, as we must, we conclude that the evidence is legally sufficient to support the jury's finding that Nobie lacked testamentary capacity at the time she executed the will in February 2006. In light of this conclusion, we need not address the issue of undue influence.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     June 2, 2015
Date Decided:       June 30, 2015