

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00074-CV

_____

MIKE NELSON AND BIG WOODS
LAND DEVELOPMENT, INC., Appellants

V.

BIG WOODS SPRINGS IMPROVEMENT ASSOCIATION, INC., Appellee

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2007-391

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Appellants have filed a motion for rehearing. This opinion is substituted for our opinion issued June 30, 2010.

This appeal arises out of declaratory judgments entered by a trial court in a suit resulting from an attempted takeover of a homeowner's association, Big Woods Springs Improvement Association, Inc. (Association), by purported new members. On appeal, the trial court's challenged declarations include (1) that the Association president had the right to adjourn the annual meeting, thus postponing election of board members and thereby preventing such takeover, and (2) that green areas were property of the Association. Also challenged is the trial court's grant of attorney's fees to the Association. We affirm the trial court's judgment.

## I.    Factual and Procedural History

The procedure for the Association annual meeting was clearly set forth in its bylaws. The Association provides notice of the meeting "[n]ot less than ten days prior to a Meeting," mails a "Ballot with the names of nominees for the Board of Directors . . . with notice of Annual Meeting to each Association Member in good standing and qualified to vote," a quorum of ten percent of the members in good standing who are qualified to vote must be present, "Members are entitled to one vote for each annual assessment fee (dues) paid," and the "Ballot is the only method of voting for Officers."

Vera Hall, president of the board of directors of the Association, sent each existing member with a right to vote their notice of election of board members, along with a ballot nominating four people for board election. The Ballot stated that it "**may be brought to the Annual Meeting at the clubhouse on June 3, 2007, or mailed to the above address. IF MAILED, BALLOT MUST BE RECEIVED BY JUNE 2, 2007 TO BE COUNTED.**" Hall called and presided over the Association annual meeting on June 3, 2007. Michael Nelson entered with Michael English, Teresa Reynolds, Tim Siler, Cathy Hulsey, and others, and a member of the group placed a video camera in the back of the meeting room.

At the meeting, Hall was handed a June 2, 2007, Big Woods Land Development, Inc. (Development)[1] letter notifying the Association that it had sold 288 lots, both platted and unplatted, to new purchasers who allegedly took possession of the property on June 1—two days prior to the scheduled Association annual meeting. The Development attached a list of the purported new owners—which demonstrated 174 of the sales were to Nelson. The list also reflected that a 1/12th payment of the Association annual dues of $180.00 had been made by each new owner. Hall was presented with a check for $4,320.00, which totalled one month's dues ($15.00) for 288 lots, and was asked that all new members be given the right to vote.[2] Other than

---

[1]The Development was co-owned and operated by a relative of Nelson.

[2]The Association returned the check because "[t]he persons for whom the dues are intended are not approved members."

3

the Development letter, Hall was not presented with any other proof of ownership of the lots through deed, contract for sale, or otherwise.

Since it was unclear whether votes from purported new members should be counted, the meeting was adjourned "following a motion second and vote." Hall confirmed that none of the purported new members had submitted an application for membership as required by the bylaws. Nevertheless, after the meeting was adjourned and the existing members left the room, Nelson reconvened the meeting with purported new members, despite the bylaw declaration that "[t]he President . . . presides at Meetings." Nelson conducted the meeting on his own for the purpose of his election as president of the board. Although Hall did not send any purported new members a ballot, 288 new ballots were signed, all dated between June 1–3. Nelson, English, and Reynolds were selected as board members through write-in votes. One or more of the new officers then went to the bank and obtained control over the Association bank account. They also passed a revitalization mandate preventing Hall, her husband, and several other current and proposed board members from "holding any current or future office in [the Association]."

The Association sued Nelson, English, Reynolds, Siler, Hulsey (Individual Defendants) and Development[3] (collectively referred to as the Nelson Group) and sought injunctive relief preventing them from "holding themselves out as being directors and/or officers of" the Association, and from exercising control over Association property and assets, including the

---

[3]The Association also sought declaratory judgment against the Development for certain timbering operations. The Association was granted a nonsuit of these claims.

Association bank account.[4]   Attached to the Association petition was a 2007 judgment in a

previous case against Nelson's wife, Rebecca, and Big Woods Springs, Inc., in which the same

trial court made the following rulings:

> The operative deed restrictions governing the Big Woods Spring [sic] subdivision
> in Wood County, Texas, apply only to platted lots and only owners of lots covered
> by the restrictions may vote on proposed amendments to the restrictions.
>
> . . . .
>
> Big Wood [sic] Springs Improvement Association, Inc. is the only entity currently
> entitled to conduct business as the homeowners association for the Big Woods
> Springs subdivision.

It is undisputed that only twenty of the lots Nelson purchased were platted lots.   Yet, he attempted

to submit over 174 votes.[5]

After the trial court issued a temporary injunction in this cause in the Association's favor,

the Nelson Group filed a counterclaim for declaratory judgment against the Association asking the

court to declare that (1) the Association's actions were contrary to the court's 2007 judgment

which provided that owners of lots covered by restrictions could vote; (2) the June 3, 2007,

meeting was not adjourned but was continued that day by the Nelson Group; (3) the action of the

Nelson Group was lawful; (4) all actions taken by the Association after June 3 were unlawful; and

---

[4]The trial court granted a temporary injunction to this effect, which is not addressed in this opinion.

[5]The Nelson Group argues that the deed restrictions govern the voting process.   As discussed later, we find that the
general voting process is governed by the Association bylaws.

5

(5) the Nelsons are members of the Association.[6]  The Nelson Group sought attorney's fees. They also asked the court to vacate the temporary injunction, which denied them access to Association grounds and property, and issue an injunction preventing the Association from denying the Nelson Group their property rights and enjoining the June 1, 2007, membership meeting, balloting, and election of officers and directors.

The Nelson Group argued in their counterclaim petition that "[t]he former procedure requiring new member application to be approved prior to new members being allowed to vote had been abandoned since at least the mid-1990's."  In reply, the Association amended its petition to include a claim for declaratory judgment that the 1995 deed restrictions applied to the subdivision. Additional facts occurring after initiation of suit, including the Development's billing of the Association for use of the community mailbox, and its claim of ownership of the Association's green areas, resulted in the Association seeking further declaratory relief and attorney's fees under the Uniform Declaratory Judgments Act.

The trial court issued judgment declaring that:  Hall had the authority to adjourn the June 3, 2007, annual meeting; the 288 contracts for sale were not for purposes of lot ownership, "but were instead a scheme for winning the election of the Board of Directors"; the 1995 deed

---

[6]There is no contest that Nelson and Rebecca owned at least one lot subject to the Association's deed restrictions since 1973.  The trial court in this cause issued a temporary injunction finding that the Nelsons were entitled to notice of membership meetings and could vote in upcoming elections as long as they paid their yearly dues in accordance with the deed restrictions, which were imposed after the 1974 letter stating the Nelsons received "a life long membership . . . without payment of any dues."

6

restrictions[7] were in full force and effect; and the Association was the owner of all green areas, picnic areas, swimming piers, boat ramps, mailboxes, and clubhouses and did not owe any fees to the Development from their use. The court further enjoined the Nelson Group from holding themselves out as Association directors and/or exercising any control over the Association's property or assets, including bank accounts. It awarded the Association $23,400.00, and an additional $5,000.00 conditioned upon successful appeal.

Only Nelson and the Development appeal the trial court's ruling.

## II.     Trial Court Properly Granted Declaratory Judgment

"A person interested under a deed, will, written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008). We review declaratory judgments in the same manner as "other orders, judgments, and decrees." TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2008); *Mid-Century Ins. Co. of Tex. v. Childs*, 15 S.W.3d 187, 188 (Tex. App.—Texarkana 2000, no pet.). In this case, findings of fact and conclusions of law were not requested or made. Thus, we must uphold the trial court's judgment if it can be sustained upon

---

[7]The restrictions referenced in the trial court's judgment contained the following language:

> Each purchaser of a tract or lot in the Subdivision must be a member of the Association. Upon acceptance of an application for membership in Big Woods Springs Association the simultaneous execution of a sales contract or the acceptance of a deed, each owner shall become a member . . . . Said membership shall be conditioned upon payment when due of such dues, fees and maintenance charges as the Association shall find necessary . . . .

7

any legal theory supported by the evidence.  *Childs*, 15 S.W.3d at 188 (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984)); *Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 148–49 (Tex. App.—Austin 2003, no pet.).

### A.     The Purported New Members Were Not Entitled to Vote Pursuant to Association Bylaws

Nelson and the Development argue that the trial court "erred in finding that June 3, 2007 . . . membership election invalid."   The trial court reasoned:   "it's standard practice in membership meetings in homeowners associations or stockholders meetings, in corporations, for there to be a cutoff date for people who are expecting to vote to have provided the information necessary to the people who are verifying it."[8]

The trial court found that Hall

> had the authority to recess the meeting.   She was the presiding officer, and as such, she had the authority to recess it to take some time to look at the -- as to whether or not this list of posed new members was a good list and whether these people should be able to vote.   There were issues as to -- there were a whole series of issues on that including whether or not the lots were platted or not platted.[9]

---

[8]Under the Texas Business Organizations Code governing nonprofit corporations, the record date for "determining the owners or members" of a corporation is "the date on which:  (1) notice of the meeting is given to the owners or members entitled to notice of the meeting" as provided by Section 6.101(d).   TEX. BUS. ORGS. CODE ANN. § 6.101(d) (Vernon 2009).   The bylaws require such notification to be mailed ten days prior to the annual meeting, suggesting that the new owners would be cut off from membership for purpose of the annual meeting vote.

[9]The parties make an argument as to the validity or invalidity of the sales contracts.   The record reflects that certain contracts for sale, all signed on June 1, 2007, provided for deferred payment and contained provisions allowing the buyer to "cancel this contract without penalty within 14 days of the effective date . . . by signing and returning the attached 'Notice to Cancel Contract.'"   In her deposition, Baker claimed that none of the purported new owners had made any payments with respect to the contracts for sale referenced in deposition exhibit numbers 6, 7, and 8 which were not provided to this Court.   Hall reiterated that these contracts for sale were cancelled.   While the trial court found the contracts valid, it was also led to the conclusion that the sales were for the purpose of influencing the election.   In our opinion, because the trial court's ruling did not depend on the nature of these new sales contracts, but

With questions of new owner membership in the air, Hall could call for a vote to adjourn the meeting. The bylaws state that Robert's Rules of Order govern the meeting and voting process where not otherwise specified. Article III of these rules provide that a motion to adjourn takes precedence over all other motions, is not debatable, and will carry by majority vote. Hall testified that the meeting was adjourned "following a motion second and vote" by all present, including the purported new members.[10] A witness for the Nelson Group comprised a list of those who voted to adjourn and those who did not. According to this witness, fourteen people voted to adjourn and twenty people voted against, an assertion with which the trial court as trier of fact could have disagreed.[11] Further, although the Association bylaws allow "[a]ny person who is the owner of legal or equitable title in any lot or living unit or any person who is a buyer under and pursuant to a contract for deed of any lot or living unit which is subject to present or future assessment by the Association . . . [to] be a Member of the Association," the person "must submit

[10]Robert's Rules of Order is a procedural manual guiding parliamentary process. *See* HENRY M. ROBERT ET AL., ROBERT'S RULES OF ORDER, NEWLY REVISED (10th ed. 2000).

[11]In a bench trial, the court is the sole judge of the witness' credibility and the weight to be afforded the testimony. *Moore v. Jet Stream Invs., Ltd.*, No. 06-09-00106-CV, 2010 WL 2197703, at *5 (Tex. App.—Texarkana June 3, 2010, pet. filed) (citing *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied)). The trial court, as the fact-finder, has the right to accept or reject all or any part of any witness' testimony. *Id.* at *5 (citing *Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals*, 934 S.W.2d 349, 357 (Tex. 1996)). On rehearing, the Nelson Group argues that Nelson was a not a new member to the Association and that his votes were enough to carry the motion to adjourn. Per Association bylaws, members are entitled to one vote for each annual dues paid. There is no evidence in the record clarifying how many annual dues were paid in full by Nelson, which may have entitled him to more than one vote.

The footnote continuation at the top reads: rather on whether Hall had the authority to adjourn the meeting and whether Nelson had the right to preside over another meeting, we need not address this issue.

9

an Application for Association Membership to the Board of Directors prior to obtaining ownership of any lot or living unit." In order to vote, the bylaws state that the member must first pay their annual assessment fee. It is undisputed that none of the purported new members filed an application for membership or paid the full amount of the annual dues. They were not entitled to vote on the issue of adjournment. Thus, the trial court's decision that Hall had the authority to adjourn the meeting is supported by the bylaws and other evidence.

On motion for rehearing, Nelson points to our opinion in *Ostrowski v. Ivanhoe Property Owners Improvement Association*, and suggests that we erred in relying on Association bylaws to determine membership status. 38 S.W.3d 248 (Tex. App.—Texarkana 2001, pet. denied).

In *Ostrowski*, bylaws stated "owners who were current with the payments of fees could vote," while a later drafted Maintenance Fund Agreement (MFA) provided only "owners of the majority of the lots" could vote to raise maintenance charges. *Id.* at 251–52 n.5. Recognizing that the bylaws and MFA created a conflict, we held that while the bylaws "govern[ed] the general process by which initiatives are decided by the Association," the MFA controlled the specific question of who could vote to raise maintenance charges. *Id.* at 253–54. This was the conclusion we reached in "harmonizing the provisions of the MFA and the bylaws" and "read[ing] them together." *Id.* at 254.

The Nelson Group argues that the 1995 deed restrictions conflict with the bylaws because the restrictions refer to automatic membership into the Association. However, both the bylaws

10

and 1995 deed restrictions require that new members submit an application for membership.[12] Further, the deed restrictions do not address the issue of which members are entitled to vote at Association meetings, while the bylaws state that "[m]embers are entitled to one vote for each annual assessment fee (dues) paid." Since there is no conflict between the bylaws and deed restrictions, *Ostrowski* does not apply to this case.

Because Nelson had no authority to preside over the meeting electing new board members, actions taken at the Nelson Group meeting, and the results following, were invalid. We find no error in the court's ruling. *See Childs*, 15 S.W.3d at 188. We overrule the first point of error.

**B.    The Green Areas Belonged to the Association Pursuant to Deed**

Next, Nelson and the Development argue that since the green areas are unplatted, they belong to the Development and the trial court erred in holding otherwise.[13] A 1984 deed to the Association, as well as annual meeting minutes dating back to 2002, demonstrate Association

---

[12]The deed restrictions specify "each owner shall become a member" "[u]pon acceptance of an application for membership . . . on the simultaneous execution of a sales contract or the acceptance of a deed."

[13]We note that with an exception not applicable here, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property. *See* TEX. PROP. CODE ANN. § 22.001(a) (Vernon 2000); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App.—Austin 2008, pet. filed); *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 211 (Tex. App.—Texarkana 2006, pet. denied). When the suit does not involve the construction or validity of deeds or other documents of title, the suit is not one for declaratory judgment. *McRae Exploration & Prod. Co. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 685 (Tex. App.—Waco 1998, pet. denied). The situation at hand involves both the title to lands and the construction to be placed on the deed of conveyance of part of the lands in controversy. Unlike our recent case of *Ramsey v. Grizzle*, No. 06-09-00026-CV, 2010 WL 1980247 (Tex. App.—Texarkana May 19, 2010, no pet.), this issue has not been raised on appeal; accordingly, the treatment of this matter solely as an action in declaratory judgment would be unassigned or unpreserved error at best, something we cannot entertain. TEX. R. APP. P. 33.1.

ownership and control of green areas.[14]  The deed refers to the lake in its conveyance and states "[a]ll green areas and picnic areas shown on all the plats of Big Woods Springs Addition referred to above are to be conveyed herewith.  All streets or roads . . . are to be conveyed herewith."  The minutes reflect that Association volunteers and contractors are to mow the green areas and proposed to block access of strangers to the boat ramp via use of a combination lock.  The bylaws also state that only members may use the lake, park areas, dumpster, clubhouse, apartment, fishing and swimming docks, and other Association facilities, all included within the deed to the Association.

Nelson and the Development concede on appeal that the clubhouse and lake were deeded to the Association, but claim that the green area "between Lots 520 and 521" could not have been included in the deeds since they "were outside the plats identified in the deeds."  A plat referencing "green area" adjacent to lot 520 was recorded in 1982.  Thus, the court could determine it fell within the 1984 conveyance of "[a]ll green areas . . . shown on all the plats of Big Woods Springs Addition."

The next point of contention involves the community mailboxes, which the Nelson Group contends do not belong to the Association.  The trial court was free to find otherwise, since the Association was given a permit in 2001 to install and use the community mailboxes.  Also, the

---

[14]Hall testified it was the Association's position that the swimming area, fishing pier, and picnic area were transferred with the 1984 deed.

community mailboxes appear to be located on green area according to a map provided to the trial court.

Thus, because the trial court's ruling is supported by the deeds and other evidence, we must uphold its ruling and overrule this point of error.

## III. Alleged Error in Award of Attorney's Fees to Association Not Preserved

Under Section 37.009, a trial court may award reasonable and necessary attorney's fees that are "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). The Association's attorney testified he billed $200.00 per hour for work that he did and $85.00 per hour for work completed by his legal assistant. Asserting that he spent 100 hours on this case and the legal assistant spent forty hours, the attorney asked for a total fee of $23,400.00.

No objection or argument as to the amount of legal fees charged by the Association's attorney was lodged until appeal. First, Nelson and the Development state "there is no evidence whatsoever that the fees awarded Plaintiff were reasonable or equitable and just in these circumstances." In order to preserve a complaint for appellate review, a party must present a timely request, objection, or motion to the trial court. *See* TEX. R. APP. P. 33.1(a)(1). The Nelson Group's counsel stated his "labors have been not as exhaustive" as the Association's attorney, that he did not "think that I've had that much time in the case. I'm not being paid by the hour, and as a result, I have not kept hourly records." He asked the court to award $12,500.00 to $15,000.00 in attorney's fees "as opposed to the higher number advocated by" the Association's

13

counsel. However, the Nelson Group's attorney never questioned the reasonableness and necessity of attorney's fees. He merely suggested during closing argument "that each side has enough merit to its case that each side ought to bear its own attorney's fees." We find this issue was not preserved. *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied).[15]

Next, Nelson and the Development argue that the attorney's fees should have been reduced by the amount of fees expended on issues abandoned or lost by the Association, such that it could not be considered a prevailing party on certain claims.[16] No such objection was made to the trial court. Thus, we also conclude this contention was not preserved. *Id.*; *see also Red Rock Props. 2005, Ltd. v. Chase Home Fin., L.L.C.*, No. 14-08-00352-CV, 2009 WL 1795037, at *7 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet.) (mem. op.) (objection that attorney's fees were not segregated was not preserved in trial court); *Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at *11 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.) (same).

---

[15]The court has discretion to award attorney's fees in a declaratory judgment action in an amount it determines is equitable and just. *Id.* at 319. Had this issue been preserved, the trial court was free to determine that the Association's attorney's testimony established that the fees sought were equitable and just.

[16]In any event, an award of attorney's fees under the Uniform Declaratory Judgments Act "is not dependent upon a finding that the party prevailed." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 754 (Tex. App.—Fort Worth 2008, pet. dism'd) (citing *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996)); *Dorman v. Arnold*, 932 S.W.2d 225, 229 (Tex. App.—Texarkana 1996, no writ).

## IV.    Conclusion

We overrule the motion for rehearing.   We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:      June 22, 2010
Date Decided:        August 12, 2010