

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-12-00017-CV
_____


JEFFERY ROBERSON, INDEPENDENT EXECUTOR OF THE ESTATE OF EARL NIX,
DECEASED, AND CARISSA AUSTIN, INDEPENDENT EXECUTRIX OF
THE ESTATE OF OCTA NIX, DECEASED, Appellants

V.

EL PASO EXPLORATION & PRODUCTION CO., L.P.,
AND GEORGE TODD CRAIG, Appellees


On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. 2009-398


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Almost a half century ago, Earl Nix executed a deed conveying some Rusk County property to LeRoy L. Propes and Valean Propes.[1] Today, we must determine whether, by the following provision of that deed, Nix reserved a mineral interest:

> It being understood and agreed that all oil, gas, and other minerals, excluding coal, lignite and clay, in and under the above described tract have heretofore been reserved and excepted, together with the right to ingress and egress for the purpose of exploring and drilling for, producing[,] storing[,] and removing the same herefrom.

Jeffery Roberson, Independent Executor of the Estate of Earl Nix, and Carissa Austin, Independent Executrix of the Estate of Octa Nix, Deceased (collectively, the Nix Estates), succeeded to whatever interest Nix retained, if any, after that deed, while George Todd Craig and El Paso Exploration & Production Co., L.P. (El Paso), as a mineral leaseholder under Craig's interest, succeeded to their interests under the Propeses. Because Nix's deed did not retain any minerals, but merely recited, falsely, that minerals had been previously retained, we affirm the trial court's summary judgment rendered for El Paso and Craig.

The Nix Estates filed suit against El Paso and Craig. Among other items, the Nix Estates sought: (1) declaratory judgment that the lease was "null, void and of no further effect," and that title to the mineral estate belonged to the estates; (2) damages resulting from conversion "in an amount equal to the market value of the proceeds of the sale of all oil, gas, and other minerals

---

[1]The deed from Nix to the Propeses is dated September 6, 1963. It is undisputed that Nix owned both the surface and mineral estate of the property in question before 1963. The Propeses' interest in the property was conveyed to Joe F. Craig in 1971 "subject to previous reservations," and Joe deeded the property to George Todd Craig (Craig) in 2000. On or about December 3, 2002, Craig executed a lease purporting to convey the mineral interest in the property to El Paso's predecessor in interest, GMT, Inc.

2

attributable to production from the subject property"; (3) an accounting; and (4) attorney's fees. Craig filed an answer of not guilty to the trespass to try title suit,[2] asserted a claim of adverse possession, and advanced the affirmative defense of statute of limitations with respect to the Nix Estates' conversion claims. El Paso filed a general denial and asserted affirmative defenses of "statute of limitations or laches" and "waiver and estoppel and mitigation."

Cross-motions for summary judgment were filed, both focusing on the interpretation of the 1963 deed. The trial court denied the Nix Estates' motion, granted El Paso and Craig's motion, and decreed that the minerals are "vested in the Defendant, George Todd Craig, as mineral owner and Lessor, and that the leasehold estate is vested in Defendant El Paso E&P Company, Co., [sic] L.P., as Lessee." We address the dispositive issue of whether summary judgment was proper.[3]

We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365

---

[2]Trespass to try title is the sole method to determine title to land or real property. *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App.—Texarkana 2011, pet. denied). However, when the suit does not involve the construction or validity of deeds or other documents of title, the suit is not one for declaratory judgment. *Nelson v. Big Woods Springs Improvement Ass'n*, 322 S.W.3d 678, 683 n.13 (Tex. App.—Texarkana 2010, pet. denied) (citing *McRae Exploration & Prod., Inc. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 685 (Tex. App.—Waco 1998, pet. denied)). This case involves both the title to lands and the construction to be placed on the deed of conveyance of part of the lands in controversy.

[3]The Nix Estates' motion was supported by the affidavit of Jim Young, an "Independent Title Consultant, Landman and the general manager of Pearson Abstract Company." Young was hired by Earl Nix in 2008 to research title and express his opinion concerning ownership of the mineral estate. In the affidavit, Young opined that Earl reserved a mineral interest in the property for himself in the 1963 deed. Craig and El Paso objected to the affidavit on the basis that parol evidence "is inadmissible as to the construction of an unambiguous instrument." The trial court's summary judgment order sustained the objection to Young's affidavit. Because we affirm the trial court's summary judgment, we need not address the nondispositive issue involving Young's affidavit.

S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Mann Frankfort Stein & Lipp Advisors*, *Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). Where, as here, both parties file dispositive cross-motions for summary judgment, and the trial court grants one and overrules the other, we review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Nash*, 365 S.W.3d at 136 (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Harris v. Hines*, 137 S.W.3d 898, 902–03 (Tex. App.—Texarkana 2004, no pet.)).

All parties agree that there is no ambiguity in the 1963 deed, although they differ markedly on its interpretation. The question of ambiguity in a deed is a question of law. *Corine, Inc. v. Harris*, 252 S.W.3d 657, 660 (Tex. App.—Texarkana 2008, no pet.) (citing *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 353 (Tex. App.—Texarkana 2000, no pet.)). An instrument is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). If, however, a deed is subject to two or more reasonable interpretations, it is ambiguous. *Id.* (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)). An ambiguity does not exist simply because the parties advance conflicting interpretations. *Id.* (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000)). For an ambiguity to exist, both interpretations must be reasonable. *Id.*

The Nix Estates take the position that the reservation language unequivocally reserves a mineral estate. El Paso and Craig argue that the language reserves nothing under the law

4

because, as the Nix Estates admit, there was no reservation or exception before the execution of the 1963 deed. Only one interpretation can be supported under the law. Therefore, the deed is not ambiguous.

When a deed is unambiguous, our primary duty in construing it is to ascertain the intent of the parties from the language in the deed. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The actual intent of the parties, as expressed in the deed as a whole, prevails over arbitrary rules. *Id.* at 462. We ascertain the parties' intentions as expressed in the document by considering the entire writing and attempting to harmonize and give effect to the whole document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005).

To support their position, the Nix Estates cite to *Pich v. Lankford*, 302 S.W.2d 645 (Tex. 1957). In *Pich*, the one who held the common source of title conveyed 160 acres of land to Turner in a deed containing a reservation of "one half of the full 1/8th Oil Royalty, or a 1/16th of all minerals produced on said land."[4] *Id.* at 646. Turner conveyed that land to Adams; and Adams conveyed the land to Higgs, reserving "one fourth of all royalty, the same being 1/32 of all oil and gas produced from said land."[5] *Id.* Higgs conveyed to Howard, who deeded the land to the Sharps, "[s]ave and [e]xcept an undivided three-fourths of the oil, gas and other minerals, on and under said land, which have been heretofore reserved."[6] The Sharps then conveyed the land to the Lankfords "[s]ave and [e]xcept an undivided three-fourths of the oil, gas and other minerals

---

[4] Interest in minerals in place and an interest in royalty are separate and distinct estates in land. *Id.* at 648.

[5] Adams conveyed his reserved interest to Fuehr. *Id.*

[6] Howard quitclaimed the interest in the three-fourths of the minerals reserved by them in their deed to the Sharps to Pich. *Id.*

. . ., and an undivided one-fourth of the minerals . . ., which minerals do not belong to the grantors herein." *Id.*

The issue determined by that court involved interpretation of the deed by the Howards to the Sharps and the deed from the Sharps to the Lankfords. The court determined that the deeds conveyed an undivided three-fourths interest in the minerals in place "in plain and unambiguous language" and that the phrases "have heretofore been reserved" and "do not belong to the grantors herein" were simply "recitals which purport[ed] to state why the exceptions [were] made." *Id.* at 648. Even though the chain of title showed that the recitals were false, the court stated, "[T]he giving of a false reason for an exception from a grant does not operate to alter or cut down the interest or estate excepted, nor does it operate to pass the excepted interest or estate to the grantee." *Id.* Thus, the court found that the undivided three-fourths interest in the minerals "was excluded from the grants in the Howard and Sharp deeds and title thereto did not pass" to their grantees. *Id.* at 650.

Referring to this language, the Nix Estates argue that "it makes no difference that no minerals had previously been conveyed prior to the deed in question." We disagree. In *Pich*, the deeds began with an unambiguous reservation, followed by a false recital concerning what was owned by the grantor. Here, the 1963 deed contains the false recital in the grant itself by stating that "all oil, gas, and other minerals, excluding coal, lignite and clay, in and under the above described tract have heretofore been reserved and excepted" and contains no reservation language.

6

Here, because the 1963 deed does not except from the grant the mineral interests it says were previously reserved, *Pich* does not support the Nix Estates' proposition.[7]

On the other hand, El Paso and Craig rely on the cases of *Ladd v. DuBose*, *Sharp v. Fowler*, and *Miller v. Melde*.

In *Sharp v. Fowler*, a deed from Cockrell, who had title to the surface of fifty acres of land and an undivided one-quarter interest in the minerals in a portion of that tract, conveyed to Browning "50 acres of land . . . being the same land described in a deed from Frost Lumber Industries, Inc. of Texas to A.D. Cockrell." 252 S.W.2d 153, 154 (Tex. 1952). While this deed did not contain express language of reservation, certain minerals were excepted in the Frost deed conveying the property to Cockrell. *Id.* at 153. The issue ripe for resolution was whether the reference to the Frost deed in Browning's deed operated to reserve the one-fourth mineral interest in Cockrell, or whether the reference only served to define the boundaries of the land. *Id.* at 154. Citing the rules that "[a] reservation of minerals to be effective must be by clear language" and that "[c]ourts do not favor reservations by implication," the court held that the reference to the interest in the Frost deed could not be seen as a reservation in the Browning deed. *Id.*

Applying the rules set forth in *Sharp*, language similar to the 1963 deed was interpreted as reserving nothing in the grantor. *Ladd v. DuBose*, 344 S.W.2d 476 (Tex. App.—Amarillo 1961, no writ). By general warranty deed, Ladd made the following conveyance to DuBose:

> all that certain tract or parcel of land situated in Wheeler County, Texas, the same being all of Section 40, Block A-3, H&GN RR Co. Survey, containing 670 acres

---

[7]The Nix Estates also look to *Bright v. Johnson*, 302 S.W.3d 483 (Tex. App.—Eastland 2009, no pet.). However, *Bright* involved the reformation of deed language based on a "mutual mistake and a scrivener's error." *Id.* at 490. As such, it does not apply here.

of land, more or less. It is agreed and understood that a one-fourth mineral interest has been heretofore sold and it is further understood and agreed that a one-fourth mineral interest in said land together with the right of ingress and egress thereon, is reserved to the grantors, their heirs and assigns, and is excepted from this grant.

It is the intention of this instrument to convey the vendee a one-half mineral interest, together with all surface rights.

To Have And To Hold the above described premises, together will [sic] all and singular the rights and appurtenances thereto in anywise belonging, unto the said Frank F. DuBose, his heirs and assigns, forever; and we do hereby bind ourselves and our heirs, executors and administrators to Warrant and Forever Defend, all and singular the said premises unto the said Frank F. DuBose, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

*Id.* at 477–78. Ladd's predecessors in interest had reserved and excepted one-fourth of the oil, gas, and other minerals for a fifteen-year term with the provision that the mineral interest would terminate at the end of the term unless there was production. *Id.* at 478. Because no oil, gas, or other minerals had been produced by the end of the term, the mineral interest had reverted and the one-fourth mineral interest recited in the deed as having been "heretofore sold" was an erroneous recitation.[8] *Id.* Thus, the court was left to decide whether Ladd or DuBose owned the one-fourth mineral interest that was "heretofore sold." *Id.* at 479. The court began by stating that the language "it is further understood and agreed that a one-fourth mineral interest in said land together with the right of ingress and egress thereon, is reserved to the grantors, their heirs and assigns, and is excepted from this grant," was in "clear language," but that a reservation or

---

[8]The Nix Estates argue that no court "has said that in construing a deed that court should look at facts that would have been disclosed by a title examination." It believes that the four corners of the document must provide the answer to the construction conundrum. However, in order to consider the effect of a false recital, we must first determine whether it was false.

8

exception as to the one-fourth mineral interest "heretofore sold" would be by implication only, and would have passed to DuBose pursuant to the rules set forth in *Sharp. Id.* at 479.

In *Miller v. Melde*, the court addressed the effect of the following clause in a deed where no reservations or exceptions had previously been made: "However, there is reserved and excepted in prior conveyances one-half (1/2) of the oil, gas and other minerals in or under said premises for a term of fifteen (15) years from the date of said reservation." 730 S.W.2d 12, 12 (Tex. App.—Corpus Christi 1987, no pet.). The *Miller* court concluded that this language excepted from the grant only such interest in minerals "reserved and excepted in prior conveyances," and thus did not reserve or except any mineral interest. *Id.* at 13.

"A general warranty deed conveys all of the grantor's interest unless there is language in the instrument that clearly shows an intention to convey a lesser interest." *Farm & Ranch Investors, Ltd. v. Titan Operating, L.L.C.*, No. 02-11-00271-CV, 2012 WL 1739916, at *2 (Tex. App.—Fort Worth May 17, 2012, no pet.) (citing *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (1957)). "It is a familiar rule in the construction of deeds that a reservation in favor of the grantor therein is to be most strongly construed against the grantor." *Reeves v. Towery*, 621 S.W.2d 209, 212 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.). Any doubt in construing a deed is resolved against the "grantors, whose language it is, and be held to convey the greatest estate permissible under its language." *Garrett v. Dils Co.*, 299 S.W.2d 904, 906 (Tex. 1957); *Farm & Ranch*, 2012 WL 1739916, at *2; *see Humble Oil & Ref. v. Harrison*, 205 S.W.2d 355 (Tex. 1947); *Russell v. City of Bryan*, 919 S.W.2d 698, 705 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

The 1963 language reciting that "all oil, gas, and other minerals, excluding coal, lignite and clay, in and under the above described tract have heretofore been reserved and excepted" is not a clear reservation of mineral rights; it is not a reservation at all. *See Sharp*, 252 S.W.2d at 154. Instead, this language merely recited that mineral interests were "heretofore reserved and excepted." *See Miller*, 730 S.W.2d at 13; *Day & Co. v. Texland Petroleum, Inc.*, 718 S.W.2d 384, 389 (Tex. App.—Amarillo 1986), *aff'd*, 786 S.W.2d 667 (Tex. 1990) ("The reference in the deed to Day & Co., Inc. to an 'undivided one-half (1/2) interest heretofore reserved' was not a current reservation, but a reference to an already existing one."). Because this recital was false, in that no mineral interest had previously been reserved, this language could not be interpreted as a reservation. *See Ladd*, 344 S.W.3d at 479. It appears that the only effect of the recitation would be to exempt the Nix Estates from liability on their warranty of title had there been a previous reservation and exception. *See id.* (citing *Bibb v. Nolan*, 6 S.W.2d 156, 157 (Tex. Civ. App.—Waco 1928, writ ref'd)).

We affirm the trial court's judgment.


        Josh R. Morriss, III
        Chief Justice


Date Submitted:    August 8, 2012
Date Decided:    September 4, 2012