

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00062-CV

MARK MANDEL, Appellant

V.

AARON PAUL COOPER, ET AL., Appellees

On Appeal from the 79th District Court
Jim Wells County, Texas
Trial Court No. 20-12-60798-CV

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Jim Wells County jury found that an interstate collision between Mark Mandel and Aaron Paul Cooper was not caused by either party's negligence.[1]  As a result, the trial court entered a take-nothing judgment against Mandel in his lawsuit against Cooper and his employer. On appeal, Mandel argues that the trial court erred (1) by denying his motion for new trial since the jury's verdict was against the great weight and preponderance of the evidence, (2) by denying him "the right to question [a] Defense Expert on his own documents," (3) by granting a directed verdict in favor of Cooper's employer, (4) by denying a motion to nonsuit Cooper, (5) by preventing Mandel from mentioning Cooper's employer during closing argument, and (6) by declining to submit a question about Cooper's employer's negligence to the jury.

We conclude that the trial court did not abuse its discretion by overruling Mandel's motion for new trial or by preventing Mandel's questioning of the defense expert on an unauthenticated document.  We also find that Mandel's complaint regarding the directed verdict is meritless and that the record fails to show that Mandel moved to nonsuit Cooper.  Because these findings are dispositive of Mandel's remaining points of error, we affirm the trial court's judgment.

## I.     Factual and Procedural Background

Mandel was driving his black Dodge Ram 3500 work truck on Interstate Highway 20 (IH-20) at night when he experienced a flat tire on the front passenger side of the truck.  Mandel

---

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  We follow the precedent of the Fourth Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

attempted to repair the flat tire using a spare. He managed to get back underway for a little while, but he soon felt the spare tire coming loose. As a result, Mandel pulled over onto the shoulder of the interstate, called for assistance, and climbed back into his truck to wait for help. While he was waiting, Mandel's vehicle was struck by a Kenworth wrecker driven by Cooper.

In his live petition, Mandel sued Cooper for negligence and alleged that "Cooper was acting in the course and scope of his employment with JWE and Big Daddy's Wrecker Inc." (Wrecker) at the time of the collision.[2]

At trial, Cooper admitted that he was working for Wrecker at the time of the collision and was traveling on IH-20 with his cruise control set at seventy-five miles per hour. Cooper said that he was "about half to three-quarters" of a mile away when he saw Mandel's truck on the side of the road. He stated that it was 8:30 at night in January, that "[t]here [was] absolutely no street lighting on that stretch of the interstate," and that it was "[p]retty dark." Cooper also said that he saw no lights or reflectors on Mandel's truck. As a result, Cooper testified that he was "right up on [Mandel], maybe 100, 150 feet away" before he realized that "six to eight inches [of Mandel's truck was protruding] into the road" in his lane of travel.

Cooper said he slowed down and tried but was unable to change lanes because there "was a heavy hauler with an oversize load" passing him. Given "the heavy flow of traffic," including a vehicle in front of and behind him, Cooper said he was unable to stop his wrecker either on the side of or directly on the highway without causing another accident. Although Cooper was able

---

[2]Mandel alleged that the spare was provided either by his employer, Luera's Welding Service, Inc., or by Mateo Luera, individually, or by Carol Clark Kinard. As the case progressed, Mandel dropped all claims against Luera's Welding Service, Luera individually, and Kinard. Mandel also dropped a claim alleging that Wrecker and its parent company, Jody Wade Enterprises, LLC, had negligently entrusted Cooper with their vehicle.

to maneuver the skinnier front of his wrecker around Mandel's truck, the back of his wrecker was wider and, as a result, Cooper's back right wheel rim hit Mandel's vehicle "on [the] fender well and the tire" while Cooper was going forty-five to fifty miles per hour. According to Cooper, nothing could have been done to avoid the accident.[3]

Mandel had a very different account of the accident. He testified that, when he pulled over, he turned on his hazard lights. According to Mandel, his front tire was touching the grass, and his "back tire had six or eight inches between the tire and the white line." In other words, in contrast to Cooper's testimony, Mandel said that he conducted a walk-around and confirmed that no part of his truck was in the lane of travel. Even so, Mandel testified that he described the location of the truck to Luera while on the phone, that Luera was concerned about the location of Mandel's truck and that she asked if he "could move any more off the road." When asked why he did not pull over more, Mandel testified, "There was three lug nuts holding the wheel, and the tire was slanted . . . . I couldn't move any more because it would have broke the wheel." Mandel also testified that he did not see any oversized loads traveling on IH-20.

According to Mandel, Cooper told him that he saw Mandel's flashers and only hit Mandel after "he had veered off over the shoulder." During cross-examination, Mandel agreed that he had received a warning from a Texas Department of Public Safety trooper for a defective tail lamp and rear reflector a week before the accident. While Mandel said he had repaired the

---

[3]Cooper testified that he approached Mandel after the accident and that Mandel said he was okay and not hurting. Cooper called 9-1-1 and, after again confirming with Mandel that he was okay and not hurting, rejected the dispatcher's offer of medical attention.

deficiencies, he also testified that he did not put anything on the back of the truck to fix the rear-reflector warning. Mandel testified that he "[a]bsolutely" blamed Cooper for the accident.

The accident report documented the difference between Cooper's and Mandel's accounts of the accident. It showed that Cooper told the investigating officer that he did not have room to safely change lanes due to traffic and that Mandel was stopped in the lane of travel, with his rear, driver-side wheel extending into the lane of travel from the improved shoulder. Mandel also spoke with the officer but maintained that the entire truck, including his tires, was on the improved shoulder outside of the white line. According to the investigating officer, there was not enough evidence at the scene to corroborate either account.

Luera testified that Mandel worked for Luera's Welding Service as an independent contractor. According to Luera, it was Mandel's responsibility to maintain the truck. Luera said that Mandel had fixed broken fuses that controlled the rear lights but that the location of the wiring made it susceptible to being bumped. Luera testified that he told Mandel to get off the shoulder because IH-20 is "a very busy highway." When Mandel explained the tire's condition, Luera told him to get off the shoulder anyway and added that the accident would not have happened if Mandel had listened to him.

Given the nature of the accident, both parties hired expert witnesses. Mandel's expert, Scott Altman, a forensic engineer and accident reconstructionist, testified that he believed Cooper could have passed Mandel without colliding with him because his wrecker was 8.3 feet wide while the lane of travel was 12.3 feet wide. Altman added that IH-20 had a shoulder that was 10.7 feet wide. When asked if Cooper could have avoided the collision if he only saw

5

Mandel when "he was 150 feet away," Altman said, "I don't know." Altman agreed that the portion of Mandel's truck hit by Cooper was painted black and was not very visible at night.

Cooper's witness, Zachery Jackson, a civil engineer and accident reconstructionist, testified that there was "not enough physical evidence on the scene to figure out if the Mandel pickup was fully on the shoulder or if it was partially into the lane as Mr. Cooper described." Even so, the physical evidence showed that Cooper "must have swerved to the left and avoided hitting [Mandel's] mirror." According to Jackson's laser measurements, the lane was five inches narrower than Altman's manual measurements, but Jackson still testified that Cooper would have had room to get around Mandel without hitting him if he would have swerved earlier. Jackson also noted that Mandel had room to pull his truck further away from the shoulder, which would have avoided the accident, but that Cooper would not have had time to avoid the accident by going into the shoulder.

After hearing this evidence, the jury answered the following question:

## QUESTION NO. 1

Did the negligence, if any, of those named below proximately cause **MARK MANDEL**[**'S**] injuries in question?

"**NEGLIGENCE**" means the failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"**ORDINARY CARE**" means that decree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"**PROXIMATE CAUSE**" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of

must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result there from [sic]. There may be more than one proximate cause of an injury.

Answer "Yes" or "No" for each of the following:

a.    Aaron Paul Cooper                    <u> No </u>

b.    Mark Mandel                          <u> No </u>

Because the jury found that the accident was not caused by any negligence, the trial court entered a take-nothing judgment against Mandel.

## II.    The Trial Court Did Not Abuse Its Discretion by Overruling Mandel's Motion for New Trial

In his first point of error on appeal, Mandel argues that the trial court erred by failing to grant his motion for new trial because the evidence conclusively established Cooper's negligence. "We review a trial court's ruling on a motion for new trial under an abuse of discretion standard of review." *Rodriguez v. United Van Lines, Inc.*, 21 S.W.3d 382, 384 (Tex. App.—San Antonio 2000, pet. denied); *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). "A trial court abuses its discretion when it acts unreasonably or without regard for any guiding legal principles." *Rodriguez*, 21 S.W.3d at 384 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

As a result, we examine whether the trial court abused its discretion in rejecting Mandel's argument that the jury's verdict was not supported by factually sufficient evidence. "When challenging the factual sufficiency of the evidence to support an adverse finding on an issue on which [an appellant] had the burden of proof at trial, an appellant must demonstrate . . . that the finding is against the great weight and preponderance of the evidence." *Fayette v. Reyes*,

7

No. 04-18-00317-CV, 2019 WL 3937280, at *2 (Tex. App.—San Antonio Aug. 21, 2019, no pet.) (mem. op.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). "In conducting such a factual sufficiency review, the reviewing appellate court considers and weighs all the evidence presented at trial and determines if the evidence supporting the jury's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust." *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)). Even so, "[t]he court of appeals is not a fact[-]finder." *Id.* (quoting *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)). "Therefore, we do not evaluate the credibility of the witnesses or substitute our judgment for that of the jury, even if a different result could be reached upon review of the evidence." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Ellis*, 971 S.W.2d at 407).

Our review of the trial transcript shows that it was replete with contrary evidence concerning the issue of negligence. Even so, Mandel argues that Cooper's testimony admitting that he hit Mandel from behind required a finding of negligence. Based on the guidance given by the Fourth Court of Appeals in *Fayette*, we disagree.

In *Fayette*, the Fourth Court of Appeals explained that a jury is not required to find either party at fault "if the evidence shows that the occurrence was caused by conditions beyond the party's control." *Id.* at *1 (citing *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 432 (Tex. 2005)). Where there is conflicting evidence of how an accident occurred, with both parties blaming each other, a jury can "reasonably conclude[] that neither [plaintiff] nor [defendant] failed to exercise ordinary care." *Id.* at *3.

Here, the record shows two conflicting version of events, with Mandel stating that his truck was lit and off the shoulder and Cooper saying that Mandel's truck was not properly lit and was in the lane of travel. As the fact-finder, the jury could have accepted Mandel's version that his truck was not in the lane of travel. It also could have believed Jackson's testimony that Cooper could have avoided the accident if he had swerved earlier. Even so, the jury could have also accepted Cooper's statements (1) that given the dark stretch of highway, he could not see Mandel's truck in time to avoid the collision and (2) that Cooper could not avoid the collision without causing another accident because of the heavy flow of traffic, including a vehicle ahead of and behind him in his lane of travel and an oversized load passing him in the adjacent lane of travel. *See id.*; *see also Nelson v. Big Woods Springs Imp. Ass'n, Inc.*, 322 S.W.3d 678, 683 n.11 (Tex. App.—Texarkana 2010, pet. denied) (recognizing that "the fact-finder . . . has the right to accept or reject all or any part of any witness' testimony").

Simply put, the trial court could have determined that the jury found the accident unavoidable and that its verdict was not clearly wrong and manifestly unjust in light of the evidence. *See Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex. 1995) ("An unavoidable accident is 'an event not proximately caused by the negligence of any party to it.'" (quoting *Dallas Ry. & Terminal Co. v. Bailey*, 250 S.W.2d 379, 385 (Tex. 1952))); *see Friday v. Spears*, 975 S.W.2d 699, 700–01 (Tex. App.—Texarkana 1998, no pet.) (same). As a result, the trial court did not abuse its discretion by finding that it was not so against the great weight and preponderance of the evidence for the jury to have concluded that both Mandel and Cooper exercised ordinary care

9

under the circumstances, which included the darkness and heavy traffic. Accordingly, we overrule Mandel's first point of error.

### III. The Trial Court Properly Prevented Mandel's Questions Based on an Unauthenticated Document

Next, without citation to authority, Mandel argues that the trial court erred by denying him the ability to question Jackson "on his own documents." Because the record shows that Mandel was attempting to question Jackson based on an unauthenticated document that came from Altman, nothing shows that the trial court erred.

During Jackson's cross-examination, Mandel referred to a document purporting to be Altman's expert report, which was not on his exhibit list and, contrary to local rules, did not contain a Bates stamp. After a short break to allow opposing counsel to examine the document, Cooper's counsel objected that the document was not authenticated and represented that it was not produced during litigation because, unlike the remaining discovery, it lacked a Bates label. Further, Cooper's counsel clarified that the document was not on any exhibit list and said, "I'm told that it was procured, I guess, from Mr. Altman, or else . . . from an assistant off the Internet or somewhere else is what they're saying."

When asked about the purported document, Jackson said it "looked like this would have been something that . . . generated from the download [of the black box] itself, and I would have provided that to my counsel at the time." After Cooper's counsel established that the document was editable and could not be confirmed as authentic and Mandel's counsel confirmed he had gotten the document from Altman and not through discovery or from Jackson, the trial court

10

ruled that the document was not properly authenticated. At that point, the trial court allowed the following proffer of testimony:

> Q. (BY [MANDEL'S COUNSEL]) Mr. Jackson, is -- on page five of 14, the application information, is that commonly referred to in your business as the data limitations on this download that you performed of the black box?
>
> A. It is.
>
> Q. And if you take a look at it, does it say -- what does EDR data mean?
>
> A. EDR stands for event -- event data recorder.
>
> Q. And if it says EDR data is only recorded for frontal deployments in the following vehicles: 2005 to -7 Durango, 2006 to -7 Ram 1500, 2006 to 2009 Ram 25- and 3500 Heavy Duty; 2007 Aspen, Caliber, Compass, Patriot, Nitro, Sebring, and Wrangler, would that indicate that the Ram vehicle that you did would -- that you downloaded this from would not record anything -- any event in a rear end or side impact?
>
> A. That's what that indicates.

Mandel claims in his brief that the trial court should have found the document to be authentic, but he fails to argue that the trial court abused its discretion by finding the document inadmissible for lack of authentication. Mandel's brief also contains no legal citations to support his point of error and fails to address any harm from the lack of introduction of evidence contained in Mandel's proffer of Jackson's testimony. *See* TEX. R. APP. P. 38.1(h), (i). While we could easily find this issue inadequately briefed, we chose to address the merits (1) by noting that the record shows Mandel attempted to offer a document he received from Altman that was fully editable and not received through discovery and (2) by concluding that there was no error in

11

the trial court's decision to disallow Mandel's proffer of Jackson's testimony based on an unauthenticated document. Accordingly, we overrule Mandel's second point of error.

## IV. Mandel's Complaint About a Directed Verdict Is Meritless

In his third point of error, Mandel argues that the trial court erred by granting a directed verdict in favor of Wrecker on his respondeat-superior claim.[4] We find this issue meritless.

Early into the trial, Cooper and Wrecker "stipulat[ed] that Mr. Cooper was in the course and scope of his employment with [Wrecker]" at the time of the collision. After Mandel rested, he confirmed that he had "dismissed his claims for negligent training, negligent supervision, negligent entrustment, gross negligence as to [Wrecker]; and . . . dismissed his claim for negligence per se and gross negligence against Mr. Cooper and [Wrecker]," leaving a claim for negligent hiring against Wrecker and a claim for respondeat superior.

As for the negligent-hiring claim, Cooper moved for directed verdict because there was "no evidence whatsoever from [Wrecker] introduced with respect to Cooper's employment file or the hiring procedures at [Wrecker]." In response to that argument, Mandel's counsel replied, "We agree, Your Honor," which prompted the following discussion:

> [BY MANDEL'S COUNSEL]: And -- and for the Court, we -- we would be going strictly off negligence.
>
> THE COURT: Okay. Well, then that will be the negligence directed at the driver of the vehicle, Mr. Cooper.
>
> [BY MANDEL'S COUNSEL]: The driver of the vehicle and . . . respondeat superior.

---

[4]"Under the theory of respondeat superior . . . an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (per curiam).

THE COURT: No, no, no. I will grant the directed verdict and -- concerning the company . . . . [b]ecause you're talking about negligent acts that were alleged against the company. I'm not talking about Mr. Cooper. I am talking about the company. And that really does get [Wrecker] out of the case now.

What's left strictly is the negligence claim against the driver, Mr. Cooper; is that correct?

[BY MANDEL'S COUNSEL]: And the respondeat superior.

THE COURT: No, no. We've already got a stipulation on the record. If the jury finds . . . Mr. Cooper negligent, we've already got a stipulation that when that act of negligence occurred, it was in the course and scope of his employment with [Wrecker]. So that -- that takes care of -- that issue's been taken care of from a legal standpoint. At least the respondeat superior position.

[BY MANDEL'S COUNSEL]: I can be this slow, Your Honor, I apologize.[5]

In his brief, Mandel does not raise a point of error complaining of the directed verdict against Wrecker on his negligent training, negligent supervision, negligent entrustment, negligent hiring, gross negligence, or negligence per se claims against Wrecker. Instead, he argues that the trial court erred by granting a directed verdict on his respondeat-superior claim. Yet, the record shows that the trial court did not grant a directed verdict *against* Mandel on his claim for respondeat superior. Rather, the trial court noted that, as a result of the stipulation, the issue of whether Cooper was in the scope of his employment during the collision was

---

[5]The trial court also clarified, "[A]ny judgment against Mr. Cooper, if they should find him negligent in this act, . . . the employer, [Wrecker] is responsible for that, because it's been stipulated to."

conclusively established in *favor* of Mandel. As a result, we find Mandel's third complaint meritless. It is overruled.[6]

## V. The Record Does Not Show that Mandel Moved to Nonsuit Cooper

In his last point of error, Mandel argues that the trial court erred by failing to nonsuit Cooper. We find this issue unpreserved.

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a). Mandel acknowledges that the appellate record fails to contain a motion to nonsuit Cooper. His brief argues that, while the "motion did not get on the record, the trial court judge did acknowledge on the record . . . that the motion was made." In support of this claim, Mandel mentions a portion of the record where he states, "We will . . . at the appropriate time renew our motion on dismissal of Mr. Cooper, but we'll wait . . . till that time." Rather than showing that Mandel moved to nonsuit Cooper, this portion of the record shows that he planned on moving to nonsuit Cooper later. Because the record reveals that no such motion was later made, we find that Mandel failed to preserve his last point for our review.

Accordingly, we overrule Mandel's last point of error.

---

[6]We have already found that the trial court properly determined that the jury's verdict of no negligence on Cooper's part was supported by sufficient evidence. This ruling, combined with the stipulation on vicarious liability, is dispositive of Mandel's remaining points of error as to Wrecker. This is because Wrecker could only be held liable if Cooper were found negligent, and the jury did not find Cooper negligent. *See Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 656–57 (Tex. App.—Dallas 2002, pet. denied) ("[I]t would not be proper for an employer to be included along with the driver [in the apportionment question] if its only responsibility was that of respondeat superior." (citing TEX. CIV. PRAC. & REM. CODE ANN. § 33.003)).

14

## VI.     Disposition

We affirm the trial court's judgment.


                                        Jeff Rambin
                                        Justice

Date Submitted:     December 22, 2023
Date Decided:       February 23, 2024