

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00236-CV
_____

900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND
RED RIVER, LLC, AND 7400 SOUTH CONGRESS, LLC, APPELLANTS

V.

ATX LENDER 5, LLC, SL RED RIVER, LP, SL SOUTH
CONGRESS, LP, AND SL CHAVEZ, LP, APPELLEES

═══════════════════════════════════════════════

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-20-007370; Honorable Amy Clark Meachum, Presiding

═══════════════════════════════════════════════

August 19, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER, J., and PIRTLE, S.J.[1]

In this wrongful foreclosure suit, 900 Cesar Chavez, LLC, 905 Cesar Chavez, LLC,

5th and Red River, LLC, and 7400 South Congress, LLC (collectively "Appellants"),

---

[1] Senior Justice Patrick A. Pirtle, retired, sitting by assignment. TEX. GOV'T CODE ANN. § 75.002(a)(1).

appeal three separate orders of the trial court: (1) *Order Denying Plaintiffs' Motion for Partial Summary Judgment,* (2) *Order Granting Defendants' Traditional Motion for Summary Judgment,* and (3) *Order Expunging Lis Pendens,* entered in favor of ATX Lender 5, LLC, SL Red River, LP, SL South Congress, LP, and SL Chavez, LP (collectively "Appellees").[2] By their first general issue, stated in three separate grounds, Appellants contend the trial court erred in denying their motion for partial summary judgment and in granting Appellees' traditional motion for summary judgment. By their second general issue, Appellants contend the trial court erred in granting Appellees' motion to expunge Appellants' *Notice of Lis Pendens.* We affirm the orders of the trial court.

### BACKGROUND

Appellants are four limited liability companies, named for the development properties for which they were created, which properties are situated in Travis County, Texas. Nate Paul is the sole owner of all four companies through his real estate holding company, World Class Capital Group. Appellants are the debtors on a promissory obligation in the original principal sum of $22,932,250.00, from a prior lender that was secured by deed of trust lien on the properties. The loan proceeds were used to finance the acquisition of the properties in September 2018. ATX acquired that promissory obligation and received an assignment of the deed of trust lien. In July 2019, Appellants defaulted in the payment of their promissory obligation. This default led to an acceleration

---

[2] Originally appealed to the Third Court of Appeals sitting in Austin, this case was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of that court and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

of the principal amount due and the issuance of a notice of substitute trustee's sale. A traditional non-judicial foreclosure sale was scheduled for the first Tuesday in November—November 5, 2019. On October 31, 2019, Appellants filed suit seeking a temporary restraining order. When their request for injunctive relief was denied, they filed for relief under Chapter 11 of the United States Bankruptcy Code and the substitute trustee's sale was thwarted by the bankruptcy automatic stay on November 4.

After several months, the bankruptcy stay was conditionally lifted on May 27, 2020. The bankruptcy court ordered that a non-judicial foreclosure sale could proceed if the properties were not sold and the indebtedness was paid in full by November 6, 2020. The properties did not sell, and payment was not made; therefore, pursuant to the provisions of Chapter 51 of the Texas Property Code, ATX posted a *Notice of Substitute Trustee's Sale* at the Travis County Courthouse and again caused notice to be mailed to Appellants. This time the sale was scheduled for December 1, 2020, between the hours of 11:00 a.m. and 2:00 p.m., on the west steps of the Travis County Courthouse, the location customarily used for conducting trustee's sales. This location is an outdoor, public area on the west side of the courthouse commonly referred to as the "sally port" or the "portico."

Prior to the issuance of the notice of foreclosure, on August 14, 2020, the Travis County Judge issued Order 2020-16, relating to COVID-19 community restrictions. The County COVID-19 Order, issued pursuant to emergency authority,[3] prohibited "any

---

[3] On March 6, 2020, a *Declaration of Local Disaster* was issued by the Travis County Judge to allow the county to take measures to reduce the possibility of exposure to COVID-19 and to promote the health and safety of Travis County residents, and on March 13, 2020, Governor Greg Abbott issued a *Declaration of State of Disaster* to allow state authorities to take additional steps to prepare for, respond to, and mitigate the spread of COVID-19 in order to protect the health and welfare of all Texas citizens. Thereafter, on March 19, 2020, Governor Abbott issued Executive Order GA-08 stating that every person in Texas shall avoid social gatherings in groups of more than 10 people.

gatherings that exceed 10 people," except as permitted by current "Governor's Proclamations and Orders."[4] Neither the County COVID-19 Order nor the Governor's proclamations specifically addressed what constitutes a "gathering," nor did they expressly permit or prohibit foreclosure sales. The County Order did provide some guidance (i.e., the recognition that outdoor gatherings were not prohibited) by providing that "[i]n accordance with the Governor's Order GA-29, every person in Travis County IS REQUIRED to wear a face covering over their nose and mouth . . . when in an outdoor public space whenever not feasible to maintain six (6) feet of social distancing . . . ."

On November 30, 2020, immediately prior to the December 1 scheduled sale, Appellants sought to reinstate the bankruptcy stay. That request was denied at 9:19 a.m., on December 1. At 10:11 a.m., Jeremy Stoler,[5] a person associated with Appellants, recorded a video showing approximately twenty to thirty people standing outside the Travis County Courthouse near the west steps. Stoler sent that video to Sheena Paul,[6] another person associated with Appellants, who then emailed the Travis County Fire Marshal, Tony Callaway, to inform him about a "large gathering of about 45 people" potentially violating the County COVID-19 Order. Chief Fire Marshal Callaway then

---

[4] On June 26, 2020, Governor Abbott issued Executive Order GA-28, relating to the reopening of Texas as a targeted response to the COVID-19 disaster. Paragraph 5 of GA-28 provided that outdoor gatherings in excess of 100 people were prohibited "unless . . . the mayor of the city in which the gathering is held . . . approves of the gathering, and such approval can be made subject to certain conditions or restrictions not inconsistent with this executive order." On July 2, 2020, Governor Abbott issued Executive Order GA-29 relating to the use of face coverings during the COVID-19 disaster. Not exempted from this face-covering requirement were persons attending a "protest or demonstration involving more than 10 people . . . who [are] not practicing safe social distancing of six feet from other people not in the same household."

[5] Jeremy Stoler was the executive vice president and head of capital markets for World Class Capital.

[6] Sheena Paul was Nate Paul's sister and head of the legal department at World Class Capital.

4

contacted the Travis County Sheriff's Department which dispatched Deputy Jeremy Trahan to the scene. At 10:27 a.m., Deputy Trahan arrived with four to six officers from the sheriff's office. Believing the assembly of persons constituted a violation of the County COVID-19 Order 2020-16, at 10:29 a.m., Deputy Trahan announced to the crowd that there would not be any auctions held that day. However, despite asking the crowd to disperse, most of the persons present continued to mill around the west steps of the courthouse. No citations were issued, no one was forced to leave, and no one was arrested. Importantly, there was no summary judgment evidence offered of any potential bidder having left the courthouse in response to Deputy Trahan's announcement. Instead, the summary judgment record showed that numerous trustee's sales were conducted during the rest of the day.

That same day, at approximately 11:50 a.m., at the west steps of the Travis County Courthouse, within the area designated by the Travis County Commissioner's Court for foreclosure sales, ATX conducted a substitute trustee's sale of the deed of trust lien it held securing payment of Appellants' unpaid indebtedness. The substitute trustee took several steps to ensure the foreclosure sale complied with the County COVID-19 Order. The trustee set up "stanchions" connected by ropes similar to what one might see at an airport or a bank to create a "protected area" where interested bidders could gather. The trustee also placed round, yellow, distancing markers on the ground so that people within the protected area would be spaced not less than six feet apart. The trustee also provided masks for any participant who attended without one. Fearing some disruption based on Paul's numerous efforts to prevent the foreclosure from taking place, ATX hired security personnel and two videographers to record the sale (one recording the substitute trustee

5

while the other recorded the attendees) to ensure there would be a clear record of everything that occurred. Once the substitute trustee opened the sale for bidding, ATX Lender 5, LLC was the highest bidder, with a credit bid of $17,858,636.54.[7] A *Substitute Trustee's Deed* was issued and duly recorded that same day.[8]

On December 7, 2020, Appellants filed suit for wrongful foreclosure, seeking a temporary injunction prohibiting ATX from transferring any interest in the secured property, and filing a *Notice of Lis Pendens.* On March 31, 2021, Judge Lora Livingston denied Appellants' amended application for temporary injunction. ATX transferred the properties to single-purpose entities (SL Red River, LP, SL South Congress, LP, and SL Chavez, LP) and Appellants added these entities as additional defendants.

On February 4, 2021, Appellants filed *Plaintiffs' Motion for Partial Summary Judgment*, on their declaratory judgment claim that the December 1, 2020 foreclosure sale was void. After notice and hearing, on April 1, 2021, Judge Amy Clark Meachum signed an *Order Denying [Appellants'] Motion for Partial Summary Judgment*.

Thereafter, on April 16, 2021, Appellees filed *Defendants' Traditional and No-Evidence Motion for Summary Judgment,* seeking affirmative relief by way of a "take nothing" judgment on Appellants' claims against them. On June 2, 2021, Judge Karin Crump signed an *Order Granting [Appellees'] Traditional Motion for Summary Judgment* and an *Order Expunging Lis Pendens.*

---

[7] ATX was the only bidder during the auction. ATX's credit bid left an unpaid balance due and owing in excess of $4,000,000.00. Appellants contend the "fair market value" of the properties sold was in excess of $31,000,000.00.

[8] Document 2020232037, Official Public Records, Travis County, Texas, filed December 1, 2020.

Within the time frame provided by the Texas Rules of Appellate Procedure, Appellants gave notice of appeal as to the three separate orders mentioned above. Finding that ATX fully complied with the statutory requirements for a valid non-judicial foreclosure sale, i.e., that there was no "defect" in the foreclosure sale, we overrule Appellants' issues and affirm the orders of the trial court.

**APPLICABLE LAW**

By statute, a non-judicial foreclosure sale of real property in Texas must comply with the provisions of Chapter 51 of the Texas Property Code. *See* TEX. PROP. CODE ANN. §§ 51.0001-51.015. Non-judicial foreclosure sales are held on the first Tuesday of each month between the hours of 10:00 a.m. and 4:00 p.m. § 51.002(a). Except in circumstances not applicable here, notice of a non-judicial foreclosure must be given at least twenty-one days before the date of sale by: (1) posting at the courthouse door of each county in which the property is located a notice designating where the property will be sold,[9] (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice, and (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt. § 51.002(b)(1)-(3). The notice must include a statement of the earliest time at which the sale may begin, § 51.002(b), and the sale must take place within a three-hour window following that time. § 51.002(c).

---

[9] In Travis County, the Commissioner's Court has designated a large outdoor area on the west side of the Travis County Courthouse (commonly referred to as the "sally port" or the "portico") as the official location to conduct non-judicial foreclosure sales.

In a wrongful foreclosure proceeding, for more than one hundred years, it has been the law in this State that inadequacy of the sales price alone will not invalidate a trustee's deed from a non-judicial foreclosure sale. *Thornton v. Goodman*, 216 S.W. 147, 148 (Tex. Comm'n App. 1919); *American Saving Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975); *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex. 1965). Typically, in order to set aside a trustee's sale, in addition to establishing that the sale brought an inadequate sales price, the claimant must also establish an issue with respect to the propriety of the sale itself. *Id.* "There must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." *Musick*, 531 S.W.2d at 587. In other words, a trustee's sale will only be set aside when the auction sales price is grossly inadequate **and** irregularities in the sale tended to contribute to that inadequate price. Although a causal connection must exist between the irregularity in the sale and the inadequate sales price, "proof of an irregularity coupled with grossly inadequate consideration gives rise to an inference or presumption that the irregularity contributed to the low price." *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 587 (Tex. App.—Texarkana 2012, no pet.) (quoting *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 828 (Tex. App.—Texarkana 1999, no pet.)).

In determining whether the consideration bid at the trustee's sale was "grossly inadequate," the trial court must consider the value of the property sold and the consideration received at the sale. *See Basley*, 373 S.W.3d at 587. Furthermore, to properly determine the adequacy of the consideration bid, the trial court must also consider the nature of the property, its physical condition, the need of any repairs or

8

maintenance, and the amount of any outstanding indebtedness secured by a superior lien or encumbrance.

### SUMMARY JUDGMENT

We begin by noting that the trial court's written order does not address Appellees' no-evidence motion for summary judgment, while it expressly states that it grants Appellees' traditional motion for summary judgment. Although grounds for a no-evidence summary judgment might exist, we must assume that the trial court based its ultimate ruling on the summary judgment evidence and arguments contained in Appellees' traditional motion for summary judgment only. The standards of review for a traditional motion for summary judgment are well-established. An appellate court reviews an order granting a motion for summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced by the motion are meritorious.[10] *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 281, n.3 (Tex. 2017).

A traditional motion for summary judgment is proper when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law on grounds plead and expressly set forth in the summary judgment motion. TEX. R. CIV. P. 166a(c); *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). A genuine issue of

---

[10] Again for clarity, we base our analysis on the grounds asserted in the traditional motion for summary judgment only.

9

material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded persons to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). In order to be entitled to a defensive traditional summary judgment, a defendant must either disprove an essential element of the plaintiff's cause of action as a matter of law, or it must establish each element of an affirmative defense as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). When reviewing an order granting a traditional motion for summary judgment, an appellate court must view as true all evidence favorable to the nonmovant and indulge every reasonable inference from the evidence in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

### ANALYSIS

By their first issue, Appellants contend the trial court erred in granting Appellees' traditional motion for summary judgment "because [Appellees] failed to conclusively demonstrate that the material facts are undisputed and negate the element of whether the Foreclosure Sale was defective." Because a defect in the manner in which the foreclosure sale was conducted was an *essential element* of Appellants' cause of action for wrongful foreclosure, as to Appellees' traditional motion for summary judgment, it was their burden to establish, as a matter of law, that there were no defects. In that regard, Appellants contended there were two defects in the foreclosure procedure and that the facts were disputed as to whether a "lawful" foreclosure was conducted because (1) the

10

substitute trustee conducted the sale in defiance of Deputy Trahan's "order" to disperse, and (2) the sale was not a "public sale" as required by the Property Code.

The undisputed summary judgment evidence established that ATX complied with the provisions of Chapter 51 of the Texas Property Code pertaining to the procedures to be followed for a non-judicial foreclosure of the deed of trust. *See* § 51.002. ATX conducted the sale in question between the hours of 10:00 a.m. and 4:00 p.m., on the first Tuesday in December 2020 (December 1, 2020), at the location designated by the Travis County Commissioner's Court as the area to conduct non-judicial foreclosure sales (the west "sally port" or "portico" of the Travis County Courthouse). § 51.002(a). At least twenty-one days prior to the sale, ATX provided Appellants written notice of default, acceleration of debt, and notice of substitute trustee's sale. § 51.002(b). Said written notice of substitute trustee's sale was properly posted at the Travis County Courthouse, duly filed in the official public records at the county clerk's office and delivered to Appellants by certified mail. § 51.002(b)(1)-(3). That notice further contained a statement of the earliest time at which the sale would begin (11:00 a.m.) and the final sale began within three hours of the time stated in the notice (11:50 a.m.). § 51.002(c). In sum, competent summary judgment evidence established the indebtedness was in default, it was properly accelerated, all conditions precedent for a valid non-judicial foreclosure were complied with, and all notices were properly given. As such, Appellees have negated, as a matter of law, an essential element of Appellants' wrongful foreclosure cause of action.

Appellants further contend the trial court erred in denying their traditional motion for summary judgment requesting a declaratory judgment of wrongful foreclosure. This

argument is a corollary to the argument presented above; however, the burdens are reversed because by this view of the question, Appellants are complaining about an adverse ruling on a motion on which they bore the burden of proof. As the original complainant and party seeking a declaratory judgment in the underlying case, it was Appellants' burden to establish that the foreclosure sale in question was "wrongful" as a matter of law. As demonstrated above, every statutory condition precedent to a valid non-judicial foreclosure was virtually undisputed. As such, it was an essential element of Appellants' burden to establish some other "defect" in the foreclosure procedure. In that regard, Appellants contend (1) the sale was unlawful because it was conducted in violation of Deputy Trahan's verbal announcement that no foreclosure sales would be conducted that day and (2) it was not a "public sale" because "gatherings" had been limited to ten persons or less, thereby excluding potential members of the public. In order to prevail on their argument, Appellants were required to establish by clear and undisputed summary judgment evidence that a foreclosure sale was somehow prohibited by law or that the sale was conducted in a non-public forum.

Appellants contend the foreclosure sale in question was prohibited by law because Travis County had adopted an emergency order limiting public "gatherings" to ten persons or less. While it is true that the Travis County Judge had issued Order 2020-16 in August of that year and it was still in effect, nothing contained in that order specifically addressed how it might be applied to outdoor non-judicial foreclosure sales. Here, Appellees took reasonable steps to control any "gathering" by erecting a roped-off area within the general area for non-judicial foreclosure sales in Travis County. Within that area, the substitute trustee took the further step of marking the floor with six-foot distance markers to ensure

12

proper social distancing and took the additional step of providing masks to anyone interested in attending the sale. Not only could interested bidders "gather" near the substitute trustee within an area complying with Order 2020-16, the public at large was still permitted to witness the entire proceeding from outside that area. Nothing about Order 2020-16 prohibited the substitute trustee from conducting a non-judicial foreclosure sale at the Travis County Courthouse on December 1, 2020. The substitute trustee took reasonable steps to ensure that not more than ten people "gathered" within the designated area during the sale and every participant was appropriately distanced and masked as required by the order. As such, the sale was not conducted in violation of Order 2020-16.

Appellees further argue that, notwithstanding the open nature of this arrangement, the sale was not a "public sale" because interested bidders may have been encouraged to leave by Deputy Trahan's announcement that there would not be any foreclosure sales that day due to the County COVID-19 Order. The problem with that argument is that the summary judgment evidence tends to show that no one listened to Deputy Trahan. Immediately after making his announcement, the crowd moved around, but most of the people present remained. Furthermore, Deputy Trahan's "announcement" was made almost an hour and a half before the sale in question commenced and there was no summary judgment evidence showing that, at the time of the sale, the public was in any way prohibited or restricted from attending the sale.

Because Appellees established, as a matter of law, that the foreclosure sale was conducted in full compliance with the requirements of Chapter 51 of the Texas Property Code, that it was not conducted in violation of any prohibition, and that it was a public

sale, we need not address the third ground, whether the foreclosure sales price was "grossly inadequate." As such, we find the foreclosure sale was not wrongful. Accordingly, the trial court did not err in denying Appellants' motion for partial summary judgment, nor did it err in granting Appellees' traditional motion for summary judgment declaring the foreclosure sale to be proper. Issue one is overruled.

The foreclosure sale having been conducted in accordance with the provisions of Chapter 51 of the Texas Property Code, the trial court did not err in granting Appellees' motion to expunge Appellants' *Notice of Lis Pendens.* Issue two is overruled.

CONCLUSION

The trial court's orders are affirmed.

Patrick A. Pirtle
Senior Justice

14